# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed December 3, 1904.

ALEXANDER BROWN

VS.

MARYLAND TELEPHONE AND TELEGRAPH COMPANY.

*Hugh L. Bond, Jr., W. Irvine Cross, B. H. Griswold, Jr.,* and *J. Pembroke Thom* for plaintiff.

*Edgar H. Gans, Wm. L. Marbury* and *Nicholas P. Bond* for defendant.

SHARP, J. (Orally)—

In the case of Alexander Brown vs. The Maryland Telephone. and Telegraph Company I think the demurrer must be sustained.

The bill in this case was filed by a stockholder in a corporation to restrain the corporation from engaging in a business which it is alleged is ultra vires. The defendant has been engaged in the telephone business, and now proposes to engage in the electric lighting business. The defendant demurred to the bill.

No contention is made against the form of the bill. The defendant's sole contention is that on the face of the proceedings it appears that the corporation has the power to engage in the electric lighting business. This is denied in the bill. The single issue then is on the question of the power.

The defendant was incorporated in January, 1890, by a certificate filed in the Superior Court pursuant to Article 23, Section 42 of the Code. The name of the corporation was the Writing Telegraph Company of Baltimore city. The purposes for which the company was incorporated are as follows:

"For conducting, owning and operating telegraph lines in the State of Maryland and for the transaction of a general telegraph business and for the acquiring, developing, improving, using, working and otherwise utilizing and disposing of the inventions and processes patented by the United States for writing telegraph instruments or apparatus appurtenant to or necessary for the operation thereof, and which may be hereafter patented, and for the sale, lease or other disposition of articles manufactured under such patents, and for the transaction of any business in which electricity over or through wires may be applied to any useful purpose."

There can be no doubt, as a matter of construction, leaving Article 23, Section 111 of the Code, out of consideration, that this last clause would include the power to do an electric lighting business.

Article 23, Section 111, provides that nothing in Article 23 shall authorize the incorporation of electric lighting companies in Baltimore city.

The defendant, therefore, did not acquire on incorporation any right to engage in the business of electric lighting in Baltimore city.

The Act of 1892, Chapter 469, provided that the charter of the Writing Telegraph Company of Baltimore city, a corporation heretofore formed under the provisions of the General Corporation Laws of this State be, and the same is hereby amended so that the said corporation may, and it is hereby authorized to transmit any business in which electricity over and through wires may be applied to any useful purpose and to that end all the rights and privileges mentioned in Section 111, Article 23, Public General Laws, title Corporations, are hereby conferred upon said corporation in Baltimore city as fully and to all intents and purposes as though said corporation had been formed to carry on business in any city or town in Kent or Cecil county. The only new power given is the power to do electric lighting business in Baltimore city. The change is not in the character of the powers of the corporation, but merely in the locality in which they may be exercised.

The rights and privileges mentioned in Section 111, Article 23, all of which are thus conferred on the Writing Telegraph Company, are as follows:

"Any electric light company formed under this section shall have full power to manufacture, and sell, and to furnish such quantities of electric light or electric power as may be required or desired in any town of Kent or Talbot counties in which, or adjoining which, the same may be located, for lighting the streets, roads, public or private buildings, or for motive power, or for other purposes; and such corporation is hereby authorized and empowered to lay, construct or build lines, or conductors under, along, upon or over the streets, squares, lanes, alleys and roads, paved and unpaved, and connect the same with any manufactory, public or private buildings, lamps or other structures or object, and with the place of the supply, subject, however, to any law or ordinance that may be passed

by the municipal authorities of the city or town, or the county commissioners having jurisdiction for the filling up, repaving or restoring such streets or roads to their normal condition."

The same powers conveyed in precisely the same language had been previously given by the Act of 1890, Chapter 233, by the legislature in the form of an amendment to the Charter. of the International Telegraph and Construction Company of Baltimore city and several other companies, formed as the defendant had been formed under the provisions of Article 23 of the Code.

It appears that the various corporations mentioned in the act were subsequently consolidated under the name of the Edison Company.

The Court of Appeals in construing this act (Edison Company vs. Hopper, 85 Md., 113) held:

"It is clear that as the constituent corporations of the appellant were incorporated under the 23rd Article of the Code, they did not possess the franchise of carrying on the business of electric lighting companies in Baltimore city prior to the passage of the Act of 1890.

Does this act then empower them to both carry on the business of an electric light company and to conduct its operations in the streets of Baltimore as contended for on the part of the appellant?"

It was contended the act gave the corporations the right to use the streets of Baltimore city without the consent of the Mayor and City Council.

The Court of Appeals held:

"The sole effect of the act was to enable the corporations named and the appellant to have the franchise of an electric light and power company which they did not possess prior to the passage of this act, and to permit the operation of these corporations in Baltimore city as in Kent and Talbot counties, subject, however, to the paramount right and power of the municipality to regulate and maintain the streets of the city for the use of the public."

A subsequent ordinance of the Mayor and City Council was passed giving the Home Telephone and Telegraph Company the right to use the streets. No. 76, 1904, approved May 11, 1904.

It is now contended by the plaintiff that notwithstanding the Act of 1892, Chapter 409, the defendant did not, after the passage of the act, have the power to engage in the electric lighting business, because:

1. The act is unconstitutional, being in violation of Article 3, Section 29 of the Constitution of this State, which provides that "every law enacted by the General Assembly shall embrace but one subject, and that shall be described in its title."

2. That such an amendment of the charter would not be valid without the unanimous consent of the stockholders of the corporation.

It should be observed that the essential point in connection with this contention is not the use of the powers conferred, but their possession. A corporation may possess powers which it does not use.

It seems to me there can be no doubt that before the passage of the Act of 1892, that this corporation had the right to do an electric lighting business in Kent and Talbot counties under Article 23, Section 111 of the Code, and in Somerset and Carroll counties by the Act of 1890, Chapter 588.

That it did not use the power prior to the passage of 1892, Chapter 469, does not alter the fact that it possessed it.

It cannot be said that the Act of 1892, Chapter 469, conferred any radically new powers on the corporation. The practical effect of the act was merely to extend the territory within which the corporation might conduct its operations.

This being true the title sufficiently describes the purposes of the act.

It is undoubtedly true that any radical change in the charter and purposes of a corporation cannot be made without the unanimous consent of the stockholders. For instance the stockholder in a life insurance company might well protest if the corporation undertook to have its charter amended to build a railroad, but in this case the effect of the Act of 1892 was merely to extend the territory in which the corporation might carry on operations. It conferred no different powers from those already possessed, there was no

radical change in the powers of the corporation.

The subject was sufficiently described in the title of the act—the act was an amendment to the charter.

There can be no doubt it seems to me that after the passage of the Act of 1892, Chapter 469, the defendant not only had the corporate power pursuant to Artical 23, Section 111, to engage in the business of electric lighting, but also the right to use the streets of Baltimore city subject to the paramount power of the Mayor and City Council to regulate and maintain the streets of the city for the use of the public.

The name of the defendant was changed to the Home Telephone and Telegraph Company of Baltimore city by a certificate filed June 10, 1895, in the clerk's office of the Superior Court of Baltimore city, pursuant to the Code, Article 23.

It is next contended for the plaintiff that if the corporation possessed the power to engage in the business of electric lighting, such power was abandoned and lost by the proceedings taken in 1899, called by the stockholders and officers of the corporation an amendment of the charter. The plaintiff contends such proceedings, though intended as an amendment were, in law, the creation of a new corporation, and that a new corporation being created, it had no power to engage in the business of electric lighting in Baltimore without an act of the legislature, Code, Article 23, Section 111.

It is contended that the original corporation was dissolved and a new corporation formed.

I do not construe the bill as alleging, or the plaintiff as contending, that the failure of the corporation to exercise the powers to do an electric lighting business conferred by the Act of 1892, Chapter 469, constitutes an abandonment of the power. The contention of the plaintiff is based on the proceedings in the Circuit Court in the case of Hoen vs. The Home Telephone and Telegraph Company, which are made by apt reference a part of the bill in this case, and the doctrine filed in the Superior Court, called by its subscribers, an amendment to the charter of the company.

It is said that the original Home Telephone and Telegraph Company was dissolved and a new corporation with the same name was created, and such new corporation cannot have the power to do an electric lighting business in Baltimore city without an act of the legislature.

The bill alleges (paragraph 4) that receivers were appointed for the Home Telephone and Telegraph Company of Baltimore city upon a bill of complaint filed in the Circuit Court of Baltimore city, August 11, 1897, in the matter of Hoen vs. Home Telephone and Telegraph Company, which proceedings are referred to in the bill for the purpose of making them a part thereof.

It is alleged in the bill in this case that it was decreed by the Circuit Court January 18, 1899, that the assets of the Home Telephone and Telegraph Company be sold, and that such assets were sold and the sale ratified April 20, 1899, and the assets turned over to the purchaser May 10, 1899. That all the stockholders and creditors of the corporation were paid in cash and the receivers discharged December 8, 1900.

An examination of the record in the case of Hoen vs. The Home Telephone and Telegraph Company, shows these allegations to be entirely erroneous.

The proceedings in that case, so far as they are material to this case, are as follows:

The bill was a creditor's bill filed by Frank Hoen and others against the Home Telephone and Telegraph Company of Baltimore city, a corporation incorporated under the laws of West Virginia and called in the proceedings, The West Virginia Company, the Home Telephone and Telegraph Company of Baltimore city incorporated under the laws of Maryland, and called in the proceedings The Maryland Company. The Maryland Trust Company and James Russell.

The bill filed August 11, 1897, alleged that the plaintiffs are creditors of the West Virginia Company and the Maryland Company, and that the West Virginia Company was the holder of the entire capital stock of the Maryland Company and had no other assets except a small sum in cash, that the Maryland Company had a charter and franchise of great value from the State of Maryland and the Mayor and City Council of Baltimore city, that the only lien on the property of the Maryland Company was a mortgage due November 2, 1896, to the Maryland Trust

Company to secure the payment of $500,000 in bonds, $73,000 of which had been issued; that no provision had been made 'to pay the interest on these bonds; that the Maryland Company had an unfinished plant; that it was insolvent and unable to pay its debts; that suits had been instituted against the West Virginia Company, and that James Russell had been appointed receiver in West Virginia, and that he was one of the defendants; that other suits had been instituted against the West Virginia Company; that the Maryland Company has very valuable franchises and a telephone system in an unfinished state.

The bill prays that a receiver may be appointed for both the West Virginia and the Maryland Company, and that the receiver of the West Virginia Company may be restrained from taking possession of the property, that the court may administer the funds of the West Virginia Company and the Maryland Company, and that an account may be taken, etc.

On January 18th, 1899, a decree was passed. The court found as a fact that the West Virginia Company owned as its only asset available for the payment of debts 5,000 shares of the stock of the Maryland Company; that the West Virginia Company was indebted to sundry citizens of this State; that the mortgage from the Maryland Company to the Maryland Trust Company was a valid mortgage to the extent that there were bonds outstanding and that the mortgage was in default, and it was decreed:

1. That all the assets of the West Virginia Company be sold, viz: The 5,000 shares of stock of the Maryland Company.

2. That trustees be appointed to make such sale.

3. That on ratification of the sale and payment of the purchase money the trustees shall turn over to the purchaser the property sold.

4. Within twelve days from the confirmation of the sale the Home Telephone and Telegraph Company (The Maryland Company), shall pay into court $90,000 to be applied to the payment of bonds and interest, that upon such payment the trustee shall deliver to the Maryland Company as re-organized by said purchaser all the assets, plant, property and rights of all kinds of said Home Telephone and Telegraph Company (Maryland Company) free from all claims, the proceeds of sale to be paid to the creditors of the West Virginia Company.

On the 24th of February, 1899, the trustee reported the sale of the stock of the Maryland Company to Middendorf & Oliver for $175,000.

On the 20th of April, 1899, the sale was ratified.

On May 24th, 1899, the receivers made their final report, and on December 8, 1900, they were finally discharged.

There is nothing in these proceedings which could possibly have the effect of dissolving the Maryland Telephone Company; on the contrary the trustees sold the stock of that corporation as the stock of a "going concern."

On the 3rd of May, 1900, auditor's accounts A, B and C were filed.

The trustee was charged in account A' with the purchase money of the stock of the Maryland Company, $175,000, interest $757.77, making $175,757.77 as the assets of the West Virginia Company, and after deducting various payments the account shows the balance for distribution of $153,122.24. This balance by account B is distributed to the Home Telephone and Telegraph Company of Baltimore city (West Virginia Company), under order of May 10, 1899.

By Account C this sum is distributed to the holders of the capital stock of the West Virginia Company.

In other words, the West Virginia Company was practically wound up.

These accounts were ratified February 4th, 1900.

It appears, therefore, that the allegation in the bill that the assets of the Home Telephone and Telegraph Company (i. e., the Maryland Company), were sold and its creditors and stockholders were paid in cash, is entirely erroneous.

The stock not the assets of the Maryland Company, the defendant in this case, was sold. Its telephone system and other assets were transferred to the purchasers of the stock as a "going concern." The Receivers operated it during the receivership, made contracts and turned it over to the purchasers as a "going concern."

There is nothing in these proceedings to indicate that a dissolution of the company took place, and they may now be left out of consideration in connection with the allegation that the original Home Telephone and Telegraph Company was dissolved and a new corporation created by the act of the stockholders and officers in 1899.

Article 23 of the Code provides the method for the dissolution of corporations. Certainly the proceedings in the case of Hoen against the Home Telephone and Telegraph Company do not bear any resemblance to the procedure provided by that law for the dissolution of corporations.

In May, 1899, a certificate was filed in the Clerk's office of the Superior Court which was called an amendment to the charter of the company. The plaintiff contends that this document was not an amendment but a new charter.

The changes made by this document are as follows:

1. In addition to the power to do a telegraph business the power is assumed to do a telephone business.

The purposes for which the corporation was organized remained precisely as in its original charter, except for the addition of the words referring to a telephone business. The clause referring to any business in which electricity may be applied to any useful purpose remains. There is no reference to any electric lighting business, nor is the Act of 1892, Chapter 349, referred to.

2. The amount of capital stock remains as before, but the par value of the shares is changed to $50 instead of $20.

3. The number of directors is increased from six to twelve and a quorum fixed at four.

All of these changes were quite within the power of the stockholders to make as amendments to the original charter. They involve no radical change in the powers of the company.

It is contended that the certificate stated the names of the directors for the first year, and that the Code required the directors to be elected.

The certificate states that the stockholders acted unanimously in amending the charter and preparing the certificate, such unanimous action would be valid for the election of directors or any other similar purpose.

It would be a most forced and unreasonable construction of this document to interpret it as creating a new corporations. To begin with, it lacks one of the essential statements required by Article 23, Section 42, of the Code, in the creation of a corporation, viz.: "The place or places where the operations of the corporation are to be carried on and the place in this State where the principal office is to be located." The judge certifying to the certificate certified to it as an amendment, and not as an original charter. It had been executed as an amendment, and the judge certified to it as an amendment. He could not have given the certificate as an original charter in the absence of the statement in the certificate of the place where the operations of the company are to be carried on, and the place in this State where the principal offices are to be located. This document must take effect as an amendment, or not at all.

This branch of the case is, therefore, resolved into the inquiry whether the failure to expressly include the power to engage in the business of electric lighting in the certificate of amendment is an abandonment of this power. Does the failure to claim the power constitute an abandonment of it?

If, however, it should be held in view of the fact that the certificate of amendment directly says, "that Article 2 of the charter is amended so as to read as follows," that therefore all powers not included in Article 2 are abandoned, the power to engage in the business of electric lighting is still included in Article 2 as amended. It retains the clause, "any business in which electricity over or through wires may be applied to any useful purpose." Certainly this would include the business of electric lighting.

It would be a most unfair and not a practical construction of a document which claims the right to engage in any business in which electricity over or through wires may be applied to any useful purpose, to hold that an electric lighting business was to be excluded, or that the valuable franchises possessed by the corporation which are included in the general language used are abandoned.

332

The Act of 1900, Chapter 227, does not affect the case. The purpose of that act was merely to permit the board of directors to appoint an executive committee, to give the company power to connect with other telephone companies. This act cannot be construed into a repeal of the Act of 1892, Chapter 249. As far as I can see it has no bearing on the amendment to the charter.

Finally, is there anything in the bill in this case which requires an answer? The demurrer admits all the substantial facts—the incorporation of the company, the passage of the Act of 1892, the two amendments made by the certificates filed in the Clerk's office of the Superior Court, are all admitted. The only allegations which might require an answer are the allegations in paragraph 4, referring to the proceedings in the case of Hoen vs. The Home Telephone and Telegraph Company in the Circuit Court.

It is alleged in support of the contention that the original Home Telephone and Telegraph Company had been dissolved, and a new corporation created that the assets of the original company were sold and the stockholders and creditors were paid in cash. It appears from the proceedings referred to which are made a part of this bill that this allegation is groundless.

It appears on the face of the proceedings that the creditors and stockholders of the defendant were not paid in cash but that the corporation was turned over to the purchaser as a "going concern."

I think this disposes of the various contentions made and I will sign an order dismissing the bill.