# J. HURST PURNELL *vs.* ROBERT M. McLANE,
## MAYOR ET AL.

*Production and Sale of Electricity—Right to Use of City Streets for Transmitting Electricity a Franchise—Electrical Commission of Baltimore City Not Authorized to Rent Space in City Conduits for Electric Wires Except to Those Having Special Authority to Use City Streets.*

The right to produce and sell electricity as a commercial product is open to all persons without legislative authority.

But the right to use the streets of a city for the purpose of transmitting electricity with wires is not common to all citizens, but is a franchise which can be granted only by the State or by the municipality acting under legislative authority.

An ordinance of the city of Baltimore made in pursuance of legislative authority provided for the construction, under the streets of the city, of conduits and directed that all wires used in transmitting electricity should be placed in said conduits, and an Electrical Commission was thereby constituted and directed to rent space in the conduits to any applicant complying with the conditions of the ordinance and those prescribed by the Commission. Section 6 of the City Charter (Code Public Local Laws, Art. 4) empowered the city to regulate the use of the streets by electric and other wires, etc. Section 8 delegates to the Mayor and City Council the power to grant specific franchises in the highways of the city. Section 10 provides that the grant of any such franchise shall be embodied in the form of an ordinance, which must be advertised, and under section 37 such ordinance must be referred to the Board of Estimates which shall ascertain the adequacy of the compensation proposed to be paid for the franchise to the city. The petitioner in this case alleged that as an individual he was engaged in producing and selling electricity and asked for a *mandamus* to compel the Electrical Commission to issue to him a permit to use a duct in certain conduits of the city. No ordinance or Act of the Legislature granting him a right to use the streets for his wires had ever been passed. *Held*, that the Electrical Commission is authorized to rent space in the conduits only to such applicants as have obtained by ordinance or Act of the Legislature some special authority to use the streets for their wires and consequently the petitioner not having such franchise is not entitled to place his wires in the conduits.

*Held*, further, that under the City Charter the compensation which must be paid by a party asking for some special privilege in the city streets

is one which must be ascertained in the precise manner directed after advertisement, etc., and is distinct from the rental charged for space in the conduits which may be, and has been, fixed by municipal ordinance at a certain sum per duct for all applicants.

Appeal from the Court of Common Pleas (HARLAN, C. J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*George R. Willis* and *Joseph C. France* (with whom was *James McEvoy, Jr.*, on the brief), for the appellant.

*W. Cabell Bruce, City Solicitor*, for the appellees.

PEARCE, J., delivered the opinion of the Court.

This is an application for a *mandamus.* The purpose for which the writ is sought is to compel Robert M. McLane, Mayor of Baltimore City, Harry F. Hooper, City Register, and A. Roszel Cathcart, President of the Board of Fire Commissioners, constituting the Electrical Commission of Baltimore City, to issue to the petitioner a permit, authorizing him to use a duct in the conduits of said city, on Sharp street, from Lombard to Pratt. The petitioner alleges that he is engaged in selling and furnishing electricity to the public, and that other than himself, there is no person engaged in the business of manufacturing electricity exclusively for sale in Baltimore City, except a corporation known as the United Electric Light and Power Company; that all wires used in transmitting electricity, must, under the law, be placed in conduits belonging to said city, and laid under its streets, lanes and alleys; that such conduits have been provided by the city under authority conferred upon it by ch. 200 of 1892, and by ch. 123 of 1898, known as the New Charter, and codified as Art. 4 of the Code of Public Local Laws of Maryland; that in accordance with the power so conferred, the Mayor and City Council enacted Ordinance No. 107, establishing an Electrical Commission, and providing for the construction, maintenance and regulation of said conduits; that by sec. 11 of said ordinance, said

commission is authorized and directed to rent space in said conduits to any applicant, who shall comply with the conditions prescribed by said ordinance, and such further conditions as should be specified thereby; that on November 10th, 1902, he applied to the Electrical Commission for space in said conduits from the premises where his plant is established, to the manhole at the corner of Baltimore and Sharp streets; that the necessary permit was granted, and that having complied with all the conditions of law, he introduced his wires in said conduits and has been ever since engaged in prosecuting his said business; that on August 4th, 1903, desiring to extend his business, he applied to said commission for additional space as above stated, offering to pay the rental established, and to perform and abide by all the conditions that have been, or may be, by law, established for the use of said conduits, but that his application has been opposed by the United Electric Light and Power Co., and the permit has been refused, solely, as he understands, on the ground that, not being a corporation, and not having maintained overhead wires in said city at the time of the passage of Ordinance No. 107, he is not entitled without special legislative or municipal authority, to rent space in the city conduits.

The defendants answered, admitting the allegations of the petition, except that, 1st. They deny that he complied with all the conditions of law, before introducing his wires into the conduits under his first application, and they allege that the then Electrical Commission inadvertently and improvidently granted the permit; 2nd. They deny that he has offered in connection with his second application to comply with all the conditions of law; and 3rd. They aver, in explanation of their denials, that he failed to comply with all the conditions of law, in that he has never obtained, either from the General Assembly of Maryland, or from the Mayor and City Council of Baltimore, pursuant to secs. 7, 8, 9, 10, 11 and 37 of the New Charter, in any lawful manner, the franchise or right to use any of the streets, lanes or alleys of said city for his wires. To this answer the petitioner demurred. The demurrer was

overruled, and the petitioner standing on his demurrer, the *mandamus* was denied and the petition was dismissed.

The precise point raised by the appeal is thus stated in the appellant's brief: "Can the commission rent conduit space only to such applicants as have by ordinance or legislative act some special authority to use the city streets?" The right to produce and sell electricity as a commercial product without legislative authority, is conceded by the appellees, that business not being a prerogative of government, but open to all, like the manufacture and sale of any other ordinary article of commerce; and the appellant concedes that the use of the city streets for delivering his product to the consumer, is a franchise, and that he cannot make such use of the streets without the permission of the State or of the the municipal government, acting under legislative authority. These mutual concessions rest upon accepted authority.

In *Bank of Augusta* v. *Earle*, 13 Peters, 595, franchises were defincd by JUDGE TANEY as "special privileges conferred by the government on individuals and which do not belong to the citizens of the country generally of common right;  *   * and in this country no franchise can be held which is not derived from a law of the State."

In *State* v. *Cin. Gas Co.*, 18 Ohio St. 262, it was said: "It cannot be doubted that the right to use the streets of a city for the purpose of laying pipes to convey gas, whether in the hands of a private corporation or a natural person, is a franchise, and as such can only emanate directly or indirectly from the sovereign power of the State. This franchise may be granted directly by the State, or by a municipal corporation, if it is clothed with power to make the grant. Such power in the municipality must either be expressly granted, or arise from the terms of the statute by implication so direct and necessary as to be clearly conferred."

In *Jersey City Gas Co.* v. *Dwight*, 29 N. J. Eq. 242, the Court said: "Any one of the defendants, in point of right and privilege, is the equal of the complainant in this respect. The plaintiff is vested with no exclusive privilege or monopoly to

make and sell gas; but the defendants also claim the right to use the public streets of Jersey City for the purpose of placing pipes therein, through which they may furnish gas to their customers; this is a right which the sovereign power can alone confer. The rule must be considered settled, that no person can acquire the right to make especial or exceptional use of the public highway, not common to all the citizens of the State, except by grant from the sovereign power. The right to use the public streets of the city for the purpose of laying gas pipes therein, is a privilege which the State alone can confer."

In *New Orleans Gas Light Co.* v. *Louisiana Light and Heat Co.*, 115 U. S. 659, it was said that the right to place pipes and mains in the public streets of a city for the distribution of gas for public and private use, is a franchise, the privilege of exercising which could only be granted by the State, or by the municipal government of the city acting under legislative authority.

The correctness of these mutual concessions being thus established, the only real question involved is whether the franchise has been granted. There is no pretence on the part of the appellant that any such franchise has ever been directly conferred upon him by any Act of the General Assembly of Maryland, but he relies upon sec. 8 of the New Charter which delegates to the Mayor and City Council the power to grant specific franchises or rights in the highways, avenues and streets of the city, which by sec. 7 are declared to be inalienable, and upon Ordinance No. 107, enacted August 25th, 1898, establishing an Electrical Commission, and he contends that sec. 11 of that ordinance contains a clear grant of the right to use the conduits constructed by the city upon the payment of the rental established by the commission.

The appellee, on the other hand, contends that ordinance No. 107 presupposes that the applicant for *space in the conduits*, has already obtained either from the General Assembly of the State, or from the Mayor and City Council under the

provisions of the New Charter, the *right to use the streets* for the purpose he desires; so that the question resolves itself simply into one of construction of the New Charter. Mr. Dillon in his work on Municipal Corporations says, "It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers, and no others: first, those granted in express words; second, those necessarily or fairly implied in, or incident to the powers expressly granted; third, those essential to the declared objects and purposes of the corporation, not simply convenient, but indispensable. Any fair, reasonable doubt concerning the existence of the power is resolved by the Court against the corporation and the power is denied." That was the rule of construction announced and applied in *Heiskell* v. *Mayor and City Council of Baltimore*, 65 Md. 148, and this rule is applicable as well to the terms and conditions upon which a *granted* power is to be exercised, as to its *existence*. The right to a franchise is no more to be presumed, than the exemption from taxation, and therefore every assertion of such right must, to be efficacious, be distinctly supported by clear and unambiguous legislative enactment. To doubt is to deny the right to the franchise. See *Sindall* v. *Baltimore*, 93 Md. 530.

The argument of the appellant that the power to rent space in the conduits is conferred in clear and unambiguous language, and in absolute and unqualified terms, is plausible when not critically examined, but cannot stand when such examination is made.

The power given to the Mayor and City Council by sec. 6 of the New Charter to regulate the use of the city streets for electric light or other wires, under the rule of construction above stated, is no more than the power to prescribe reasonable rules and regulations, under which those *having a franchise* may exercise it, and Ordinance 107 is no more than the enactment of such reasonable rules and regulations, and when these are read, as they must be in connection with secs. 8, 10, 11, and 37 of the Charter, it seems to us there is no room left for argument.

Sec. 8 provides that the Mayor and City Council may grant for a limited time, specific franchises or rights in or relating to its wharves, landings, highways, avenues and streets, *provided*, such grant is in compliance with the provisions of that article, and that the terms and conditions of the grant be first authorized by an ordinance duly passed, specifically setting forth the nature, extent and duration of the franchise or right so granted ; and that no such franchise or right shall pass by implication.    Sec. 10 provides that before any grant of the franchise or right to use any street or avenue either, on, above or below the surface shall be made, the proposed specific grant, embodied in the form of an ordinance, with all the terms and conditions including the provisions as to rates, fares and charges, shall be published by the Comptroller twice a week, for three successive weeks, in two daily newspapers of Baltimore City, and that all the provisions of sec. 37 of that article shall be complied with.

Sec. 11 provides that when a franchise is granted in compliance with the previous sections, there shall be an express reservation of the right and duty at all times, to regulate and control the grant in all matters not inconsistent therewith.

Sec. 37 provides that when an ordinance, as prescribed in sec. 8, has been introduced into either Branch of the City Council, it shall after the first reading, be referred to the Board of Estimates which shall make diligent inquiry as to the money value of the proposed franchise or right and the adequacy of the proposed compensation to be paid therefor to the city; with other provisions not necessary to be set out in detail here but all looking to the obtaining of the largest amount obtainable for said franchise or right.

It is obvious that the compensation which is required for the use of the streets by these provisions, and the rentals for space in the city conduits, are totally distinct matters; one *must* be ascertained by advertisement in order to obtain the largest amount, while the other *may be fixed* in the discretion of the City Council, and in fact is so fixed by Ordinance 81, passed December 10th, 1900, for *all applicants* at so much *per* duct foot.

None of the preliminaries prescribed by the sections to which we have referred, have been complied with, and without such compliance, the appellant has no more right to demand, and the appellees have no more right or power to grant the use of the city's conduits, than if the power and right had been expressly reserved to the Legislature alone.

This construction is not merely technically and logically correct. It is just and equitable both to the taxpayers and to the appellant. If the city, instead of electing to construct the conduits, had authorized their construction by some person or corporation applying for such right, the applicant could only obtain such right by compliance with all the provisions of law to which we have referred, and yet, in addition to the compensation required for such franchise, would have been at all the expense of construction which here has been borne by the city. It is thus made clear that the rental charged is imposed solely to reimburse the city for its outlay in construction and to provide a fund for the future maintenance of its conduits.

For these reasons the order appealed from will be affirmed.

*Order affirmed with costs above and*
*below.*

(Decided January 22nd, 1904.)