# THE BALTIMORE COUNTY WATER & ELECTRIC COMPANY *vs.* THE COUNTY COMMISSIONERS OF BALTIMORE COUNTY ET AL.

*Right of a Water Company to Lay its Mains Under Highways in Baltimore County,*

The legislative charter of a water company authorized it to lay its pipes in the first district of Baltimore County without obtaining the assent of the County Commissioners. The Act of 1900, ch. 52, authorized the company "to extend its operations to other parts of Baltimore County," and provided that the company should have, in addition to its existing rights, all the rights conferred upon corporations incorporated under Code, Art. 23. By sec. 358 of Art. 23, it is provided that a water company shall have the right to lay its pipes under highways, provided the assent of the County Commissioners shall be first had and obtained *Held*, that the authority given to the company by the Act of 1900 to extend its operations to all parts of the said county, was the grant of a franchise to operate there, but did not authorize the company to lay its mains under the highways without the assent of the County Commissioners.

*Decided February 28th, 1907.*

Appeal from the Circuit Court for Baltimore County (DUNCAN, J.)

The cause was argued before BRISCOE, BOYD, PEARCE, SCHMUCKER, BURKE and ROGERS, JJ.

*William S. Bryan, Jr.,* and *A. deR. Sappington,* for the appellant.

*Osborne I. Yellott,* for the appellee.

BOYD, J., delivered the opinion of the Court.

This is an appeal from a decree sustaining a demurrer, and dismissing the bill filed by the appellant against the appellees. The bill sought to enjoin the County Commissioners of

Baltimore County and the Highways Commission of Baltimore County, from preventing, obstructing or in any way interfering with the construction by the appellant, or its employees, under the supervision of the Highways Commission, of its mains, pipes and conduits proposed to be laid in South Bend avenue, Fifth street and North avenue, in accordance with the application for a permit, which it had made to the Highways Commission. Those highways are in Mt. Washington, which is an unincorporated village in the Third Election District of Baltimore County. By the Act of 1904, ch. 465, the County Commissioners are constituted the Highways Commission of Baltimore County "by which name they may sue and be sued in the Courts of this State in all matters pertaining to the highways and bridges over which they are given control by the provisions of this Act." The individuals composing the Board of County Commissioners were also made defendants.

The appellant was formed by the consolidation of the Catonsville Water Company with the Chesapeake Electric and Water Company of Baltimore County. The Catonsville Company was incorporated by the Act of 1886, ch. 100, and its charter was amended by the Acts of 1888, ch. 73 and 1900, ch. 52. The Chesapeake Company was formed by the consolidation of two other companies, organized under the General Laws. An application made by the appellant to the Highways Commission for a permit to lay water mains in the street and avenues named above was refused, and this bill was then filed.

The appellees contend that the Act of 1900, ch. 52, is unconstitutional and void, under sec. 48 of Art. 3 of the Constitution, but without discussing that question, and assuming it to be valid, we will proceed at once to the consideration of what we deem to be the most important question in the case. It is thus stated in the appellant's brief: "Was it within the chartered powers of the appellant to lay its water mains in the highways of Baltimore County, without first obtaining the assent of the County Commissioners of Baltimore County?"

Inasmuch as the appellant relies entirely upon the powers conferred on the Catonsville Company by its original charter and the amendments thereto, to sustain its contention, it becomes necessary to ascertain what they were.   It will be conceded that the powers and rights conferred upon that company to lay its pipes in the highways of Baltimore County now belong to the appellant, as the principle is settled in *Con. Gas Co.* v. *Baltimore Co.*, 98 Md. 695; *State, use Dodson* v. *B. & L. R. R. Co.*, 77 Md. 489, and other cases.   Nor do we understand it to be denied by the appellees that the Catonsville Company had the power, under its original charter, to lay pipes in the highways of the village of Catonsville and in the First Election District of Baltimore County, without obtaining the assent of the County Commissioners.   It was so decided by the lower Court, and in the case of *Baltimore City* v. *Balto. Co. Water Co.*, 95 Md. 232, we held that it was not necessary to have a permit from the City Engineer before it could lay its pipes in what was formerly a part of the First Election District of Baltimore County, but had been annexed to Baltimore City.   It is admitted by the appellant that it is proper to apply for a permit from the authorities, just as was done in the case last cited, so that they may know the work is being done by those authorized to do it and they can have proper supervision over it, but if the permit is refused then the appellant contends it has the right to proceed without it, provided, of course, it is done within the territory over which it has such powers given it by its charter.   The original charter confined the operations of the Catonsville Company to the First Election District of the County and Catonsville, and although the avenues and streets involved in this case are in the Third District, the appellant contends that the amendments to that charter now give it the right to lay its pipes, etc., in all the highways of Baltimore County, without first obtaining the assent of the County Commissioners, who, as we have seen, constitute the Highways Commission.

By the Act of 1888 the Catonsville Company was empowered "to extend its operations to and including Ellicott City,

and to within a radius or distance of one-half a mile from the corporate limits thereof." It was further authorized and empowered by the Act "to exercise and use all the powers, privileges, rights and franchises, and in general to do anything within the corporate limits of Ellicott City aforesaid, and the radius or distance of a half mile therefrom as aforesaid, which it is now empowered to do in the village of Catonsville and the First Election District of Baltimore County by the provision of said Act" of 1886; and all the provisions of that Act were "extended to and declared to apply to and to be in force" in the new territory, as fully as if it had been named therein, and as fully as said Act of 1886 then applied to Catonsville and the First District.

Then the Act of 1900, ch. 52, was passed. It is an Act to amend the Act of 1886, incorporating the Catonsville Company, as amended by the Act of 1888, "by adding thereto certain sections for the purpose of extending the operations and increasing the powers thereof." As it is the one under which the appellant claims the right asserted in this case, we will quote at length from it. It provides that "the Catonsville Water Company be and is hereby authorized and empowered, from time to time, to extend its operations to other parts of Baltimore County, and also to Howard and Anne Arunel Counties, and that said corporation shall have, in addition to the rights and privileges heretofore conferred upon it, and which it now enjoys, all the rights and privileges conferred upon corporations incorporated under Art. 23 of the Code of Public General Laws  *  *  *  but nothing herein contained shall be construed to permit said company from further extending its operations in the city of Baltimore." There can be no doubt that the Act of 1888 intended to give the company the same powers over the territory therein named as it had over that described in the original charter, but there is nothing on the face of the Act of 1900 to suggest to the Legislature that it was intended to give the company power to lay its pipes in any or all the highways of Baltimore Howard and Anne Arundel Counties, without first obtaining permission rom the county authorities.

By Art. 23, sec. 246, of Code of 1888 (which was a part of the Act of 1868) it was provided that "Any corporation which may be formed under the provisions of this article *for the purpose of supplying with pure water any town or city* in this State" shall have certain powers therein named, including that "to lay its pipes and construct all such other works in *said town or city* as shall be necessary or suitable to carry out the purposes of said corporation; provided the assent of the municipal authorities of said *town or city* be first obtained." Then by the Act of 1898, ch. 199, that section was amended (being now sec. 358), so that it embraced any corporation formed under that Article "for the purpose of supplying water"——no longer limiting it to supply pure water to a *town or city*——and it provides that such company "shall also have power to lay pipes and construct all such other works as shall be necessary or suitable to carry out the purposes of said corporation; provided, the assent of the municipal authorities of any incorporated town or city in which the operations of said corporation may be carried on shall be first had and obtained, or if the operations of any such company shall be carried on in any county outside of an incorporated town or city, *the assent of the County Commissioners of said county shall be first had and obtained."* The section then provides that all such works and the exercise of the powers granted shall, at all times, be subject to such reasonable regulations as the municipal authorities or County Commissioners, as the case may be, may prescribe. It is thus seen that the policy of this State, as declared by the Legislature in clear and unmistakable terms, was at the time the Act of 1900 was passed, and had been for years before, that all water companies chartered under the general laws should be required to obtain the assent of the authorities in control of the public highways, before exercising the valuable franchise of laying their pipes in the public streets and roads. And, although we have not deemed it necessary to determine the question raised by the appellees, as to whether the Legislature could, under the provisions of the constitution above cited (sec. 48 of Art. 3), grant the powers to a corporation incor-

porated by a special act, to thus use the public highways without the assent of the officers in control of them, it is manifest that if such power be conceded or assumed to be vested in the Legislature it would be required to use clear and unequivocal language to indicate its intention to do so—in the face of its declared policy on the subject.   This Court said in *Purnell* v. *McLane*, 98 Md. 594, "The right to a franchise is no more to be presumed, than the exemption from taxation, and therefore every assertion of such right must, to be efficacious, be distinctly supported by clear and unambiguous legislative enactment.   To doubt is to deny the right to the franchise." We might with propriety add to this clear and emphatic declaration, that this is especially so when the right to use the public highways is asserted, regardless of the assent of those who have been placed in control over them by the laws of the State, and particularly when, as in this case, that right is asserted, although those so in control have actually refused to permit such use of the public highways, as they are presumed to have been acting for the interests of the public, which they represent.

Keeping these important principles in view, let us see how far the Act of 1900 complies with them, or approaches the standard fixed by this Court, in considering such rights, claimed to exist under legislative enactment.   In the first place a comparison of that Act with those previously passed for the Catonsville Company shows a striking contrast, and furnishes strong evidence of an intention of the Legislature *not* to confer by the Act of 1900 such power as is contended for over the highways of the three counties.   By the Act of 1886 the company was expressly authorized, "to excavate the earth and lay pipes for water in the said village of Catonsville and the said First Election District of Baltimore County," in addition to the broad powers given it by sec. 2, where amongst others it was authorized to "purchase, lease, hold, use and possess such lands, water rights, powers and privileges, tenements, goods and chattels as may be necessary for collecting streams of water, elevating, preserving, using and

distributing the same, as the means of abundantly supplying with pure water, the public and private houses, streets, squares, lanes, alleys and other places *in the village of Catonsville and also in the First Election District of Baltimore County*, and for properly disposing of the said water and such other powers as may be necessary to carry into effect the purposes of this Act." When the Act of 1888 was passed, although the title read that is was "for the purpose of increasing the capital stock and *extending the operations* thereof" and the body of the Act empowered the company "*to extend its operations*" (the very language so much relied on by the appellant), the Legislature, *intending to give it the same powers* in the new territory as it had in the original, *said so*, in language too plain to admit of doubt, as will be seen by what we have quoted above from that Act. But when the Act of 1900 was passed the general laws required the assent of the county authorities, and there is nothing in it which indicates that the Legislature intended to authorize the Catonsville Company to lay its pipes in the public highways of the three counties without first obtaining such assent, certainly no such clear expression of the intent of the Legislature as was embraced in the Act of 1888, which it must be remembered was passed before the general law requiring the assent of the County Commissioners if the operations were to be carried on in a county, outside of an incorporated town or city. So comparing the Act of 1888 with that of 1900 we may well conclude that if the Legislature had intended to confer, by the Act of 1900, such a power as that now under consideration, it would have used such language as was employed in the Act of 1888, or its equivalent, and not simply such general terms as are in the Act of 1900. As it did not, the fair presumption is that it did not so intend, especially in view of its policy, as declared just two years before by the Act of 1898.

But it is contended that when the Catonsville Company was authorized "*to extend its operations* to other parts of Baltimore County, and also Howard and Anne Arundel Counties, it was manifestly the intention of the Legislature to authorize the

company to transact its business, to operate, to do things in these new localities that it had heretofore had the power to do, and had done," in the territories included in the Acts of 1886 and 1888.   It is argued that the words *"extend its operations"* are meaningless unless that be so.   But is that correct?   It cannot be doubted that the operations of the Catonsville Company were limited to the particular territories named in the Acts of 1886 and 1888.   We need not stop to discuss the question whether it could use the public highways, without the assent of the County Commissioners, for its pipes, conduits, etc., in conducting the water from its source or sources of supply to those territories, but conceding that it had the right to construct dams, reservoirs and other places for storage, outside of those territories, and then, either over its own right of way, or over the public highways conduct the water to those territories, it cannot be denied that it was not authorized to supply pure water to houses, etc., outside of Catonsville, the First Election District, Ellicott City and the country within a half mile of the limits, before the Act of 1900 was passed.   Its "operations" were limited to those places, and could not be carried on beyond them, excepting of course such of the "operations" as were necessarily and properly carried on elsewhere, in order to enable the company to supply the water within the defined territories, some of which are referred to above.   In order to have authority to supply water to houses and other places beyond the points named in the Acts of 1886 and 1888, the Act of 1900 or some amendment to the charter was necessary, and it by no means follows that, because it was authorized to *"extend its operations"* to the remaining part of Baltimore County, and to the other two counties, in doing so it could use all, or any, of the public highways of the three counties, regardless of the assent of the officers in control of them.   The Legislature undertook to give the company the *franchise* to conduct its business within those three counties, and *without that* it would seem to be clear that it could not use the public highways for laying, repairing or replacing its pipes, even with the consent of the

County Commissioners, unless it was given by the General Laws or some authority from the State. Such a franchise may be granted either directly by the Legislature or by a municipal corporation, provided the later is clothed with the power, but it must emanate from the State. *Con. Gas Co.* v. *Balto. City*, 101 Md. 546; *Purnell* v. *McLane*, 98 Md. 592; 14 *Am. & Eng. Ency. of Law*, 920. The authorities cited refer to gas pipes, but the use of public highways for water pipes stands upon the same principle as their use for gas pipes. 30 *Am. & Eng. Ency. of Law*, 438.

It could not be pretended that the Act of 1900 gave the company power to use *private* property, without the consent of the owner, and it would seem to be equally clear that neither the Legislature nor the County Commissioners could authorize this or any other water company to use county roads, if the fee belonged to the abutting owners, without their consent. For while the authorities generally concede that gas and water companies, which have received legislative authority to lay their pipes in the streets of cities and towns, can do so without the consent of, and without compensating, abutting owners, a different rule applies to county highways. *Mackenzie's case,* 74 Md. 47 ; 14 *Am. & Eng. Ency. of Law*, 921 ; 30 Ib. 438, *Thornton on Oil & Gas*, sec. 505. The reason for the distinction is that streets in cities and towns are acquired for all the ordinary purposes of streets, which include laying gas and water pipes, but the easement the public acquires in a right of way for a county highway is the right to travel along it, and its incidents, and generally nothing else. *Mackenzie's case. supra.* The use of such roads for horse and electric railways, without imposing an additional servitude, is explained by the theory that they are only improved methods of travel over the road, as will be seen in *Lona. Ry. Co.* v. *Cons. Coal Co.*, 95 Md. 630, and cases there cited, but that is not so in the use of a county highway for gas and water pipes. It is therefore manifest that the mere power "*to extend its operations*" did not necessarily mean that the Catonsville Company was to have the power to use the public highways, regardless of the assent of the County Commissioners.

Nor can the provisions that " said corporation shall have, in addition to the rights and privileges heretofore conferred upon it, and *which it now enjoys,* all the rights and privileges conferred upon corporations incorporated under Art. 23 of the Code " be construed to give it the power to use the highways without the assent of the County Commissioners.    Inasmuch as Art. 23 of the Code expressly requires the assent of the County Commissioners, the reference to it in this connection strongly implies that it was intended that this company should be subject to that restriction.    It could scarcely be contended that it would be entitled to the benefit of the provision contained in what is now sec. 358 of Art. 23 that it " shall also have power to lay pipes and construct all such other works as shall be necesssary or suitable to carry out the purposes of said corporation," but that it would be free from the *proviso* immediately following it, which requires the assent of the County Commissioners.    The expression " in addition to the rights and privileges heretofore conferred upon it, and *which it now enjoys* " may have been intended to continue all those conferred by the Acts of 1886 and 1888, including the right to use the public highways, even without the consent of the Commissioners, *within the prescribed limits mentioned therein,* but cannot, under the principles of construction to be applied to such rights and privileges, be extended so as to be applicable to the public highways of three counties and to give that company such powers over them as the appellant now contends for.

Our conclusion is that the appellant was not authorized to lay its mains, pipes and conduits in the highways mentioned in the bill of complaint without first obtaining the assent of the Highways Commission of Baltimore County, and without discussing other questions referred to at the argument, the decree of the lower Court must be affirmed.

*Decree affirmed, appellant to pay the costs.*