WORCESTER ELECTRIC COMPANY *v.* JAMES W. HANCOCK, ET AL.

---

SNOW HILL ELECTRIC LIGHT AND POWER COMPANY *v.* JAMES W. HANCOCK ET AL.

---

MAYOR AND COUNCIL OF SNOW HILL *v.* JAMES W. HANCOCK ET AL.

---

PUBLIC SERVICE COMMISSION *v.* JAMES W. HANCOCK ET AL.

*Municipal Powers—Sale of Electric Plant.*

After a municipality has purchased and taken possession of an electric light plant, and begun to operate it, the property is dedicated to a public use, and the municipality cannot divest itself of the title thereto by sale, without special authority from the Legislature, even though the municipality has not paid for the plant, nor acquired the legal title thereto.     pp. 677, 678

The powers conferred upon the Public Service Commission are of a regulatory nature, and do not include the power to authorize a municipality to sell an electric light plant, dedicated to a public use.                p. 678

*Decided January 11th, 1927.*

Appeals from the Circuit Court for Worcester County. In Equity (PATTISON, C. J., and DUER, J.).

Bill by James W. Hancock and others against Harold E. West and others, constituting the Public Service Commission of Maryland, the Snow Hill Electric Light and Power Company, the Mayor and City Council of Snow Hill, and the Worcester Electric Company. From a decree for plaintiffs, each of the defendants separately appeals. Affirmed.

The causes were argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*F. W. C. Webb,* with whom were *Woodcock & Webb* on the brief, for the Worcester Electric Company, appellant.

*John W. Staton,* with whom were *Staton & Whaley* on the brief, for the Snow Hill Electric Light and Power Company and the Mayor and Council of Snow Hill, appellants.

*John Hubner Rice, Assistant Attorney General,* with whom was *Thomas H. Robinson, Attorney General,* for the Public Service Commission, appellant.

*Levin C. Bailey,* with whom were *Miles, Bailey & Miles,* for James W. Hancock and others, appellees.

ADKINS, J., delivered the opinion of the Court.

The question in this case is the right of the municipality of Snow Hill, Md., without an act of the Legislature, to dispose of its interest in the Snow Hill Electric Light and Power Company, which the city holds under a contract of sale with the Snow Hill Electric Light and Power Company dated July 14th, 1924. By chapter 179 of the Acts of 1924, the city was "authorized and empowered to acquire by purchase and to operate and maintain the existing electric light plant in Snow Hill for the lighting of the public buildings

and highways of said town, and to sell light or heat, or light and heat for private and public buildings to any or all consumers to the same extent that a private owner of said plant might so supply the same," and to issue and sell coupon bonds to the amount of twenty thousand dollars to provide a fund therefor. The act provided that nothing therein should be construed as relieving the Mayor and Council of Snow Hill from any of the provisions of the Public Service Commission law.

By the above-mentioned contract, made in pursuance of said act, and subject to the approval of the Public Service Commission of Maryland, it was provided that "the said party of the first part (the company) does hereby bargain and sell to the said party of the second part (the city), and the said party of the second part does hereby purchase from the said party of the first part, as of the first day of July, 1924, said existing electric light plant in Snow Hill, including all the property, rights, appurtenances, privileges, contracts, assets, bills, notes and accounts receivable, excepting, however, cash on hand and in bank, at and for the sum of fifteen thousand dollars with interest from July 1, 1924, * * *"; that the parties should immediately upon its execution unite in an application to the Public Service Commission for its approval of the contract; that the city should, immediately upon securing such approval, exercise the authority conferred upon it by said act of assembly, and take the necessary legal steps looking to a prompt sale of the bonds authorized by said act, and immediately upon receipt of the proceeds of said bonds pay to the said company the purchase price of fifteen thousand dollars, with interest from July 1, 1924; whereupon the company should execute and deliver to the city a good and sufficient deed and bill of sale conveying said property.

The bill of complaint filed by certain citizens and taxpayers of said city recites said act of assembly and contract of sale; also chapter 455 of the Acts of 1894, whereby the inhabitants of Snow Hill were made a body corporate by the name of the "Mayor and Council of Snow Hill," and section

2 of which act provides: "And by that name shall have perpetual succession, may sue and be sued, use a common seal, and possess such powers and privileges and incidents as may attach, by law, to a municipal corporation, may purchase and hold real, personal and mixed property, and dispose of the same for the benefit of the said town."

The bill alleges "that, besides the acts above referred to, no other acts or parts of acts have been passed by the General Assembly of the State of Maryland in any manner affecting the rights of the Mayor and Council of Snow Hill to acquire, operate, maintain, or dispose of the said electric light plant in Snow Hill"; that the said contract was approved by the Public Service Commission by its Order No. 8361, and also the exercise by the city of the rights and privileges granted by said chapter 179 of the Acts of 1924; that in pursuance of said contract and order, the Mayor and Council of Snow Hill has taken over from the Snow Hill Electric Light and Power Company the said electric light plant at Snow Hill as of the first day of July, 1924, and has operated the same as the Municipal Power Company, and is still operating the said plant, and has agreed to pay said company the purchase price named in said contract, although the city has not actually paid the company said purchase price, and has not sold said bonds or received a deed for said plant; that by memorandum of agreement dated April 17th, 1925, said company and city have sold to the Worcester Electric Company said plant at and for the sum of $16,000, reserving, however, to the city all cash on hand and all bills, notes, and accounts receivable; that thereafter joint application was made to the Public Service Commission by the city and said companies for an order rescinding Order No. 8361, and permitting and approving the said sale and transfer to the new company, and the abandonment and discontinuance by the city and the old company of all the rights, privileges, and franchises heretofore exercised by them or either of them, and for a certificate of authority to the said new company to conduct, operate, and maintain a system for the generation

and supplying of electricity; that a protest was filed by many citizens and taxpayers of said city, but the commission after a hearing passed order No. 9096 granting said application; that plaintiffs are informed and therefore charge that the attempted sale by the Mayor and Council of Snow Hill of its plant to said new company is *ultra vires,* illegal, and null and void, and likewise said Order No. 9096 of the commission; that said plant is a valuable asset to plaintiffs and to all other citizens and taxpayers of said city, and that the sale thereof by the city will cause said citizens and taxpayers irreparable loss and injury, for which no adequate compensation could be made to them at law.

The prayer of the bill is for an injunction restraining Harold E. West, J. Frank Harper and Ezra B. Whitman, constituting the Public Service Commission of Maryland, from putting into effect said Order No. 9096, and the Snow Hill Electric Light and Power Company, the Mayor and Council of Snow Hill, and the Worcester Electric Company, from consummating the sales and purchase of said plant as contemplated by said memorandum of agreement, and from abandoning and discontinuing the operation of said plant as now operated by the Mayor and Council of Snow Hill; and for general relief.

To the bill demurrers were filed by the Public Service Commission, the Snow Hill Electric Light and Power Company, and the Worcester Electric Company, and an answer was filed by the Mayor and Council of Snow Hill.

The answer admits that, in pursuance of its contract with the Snow Hill Electric Light and Power Company, and the order of the commission, the city has taken over the said plant as of July 1st, 1924, and has operated the same as the Municipal Power Company, and is still operating said plant and has agreed to pay said company the purchase price named in said contract; but avers that there has never been any consummation of the contract of purchase of said plant by the city; that no part of the purchase price has been paid, nor will payment by the city be required if the agreement of April 17th, 1925, be consummated; that by a true construc-

tion of the said two contracts there has never been a consummated purchase of said plant by the city and no sale of said plant by the city, but the second contract is in legal effect merely a substitution, by consent of all parties and subject to the approval of the Public Service Commission, of the Worcester Electric Company as purchaser in the place of the city; it denies that the sale by the city of said plant to the Worcester Electric Company, under Order No. 9096 of the commission, is *ultra vires* or illegal; it denies that said plant is a valuable asset to the citizens and taxpayers of said city, but alleges that it is an expensive liability and that the substitution of the Worcester Electric Company as purchaser would be to the great benefit and advantage of all taxpayers of the city. It then proceeds to give the history of the plant; of the dissatisfaction of the people with the inadequate service, and of efforts to sell to the Eastern Shore Gas and Electric Company; and alleges that the city took over the plant only after the failure of these efforts; that after getting expert advice it became apparent that to put said plant in condition necessary for lighting the town only, without provision for commercial power requirements, will require an additional investment of at least $30,000, making a total investment of not less than $45,000; whereas the city's power to borrow for this purpose is limited to $20,000; that after entering into the agreement with the Snow Hill Electric Light and Power Company of July 14th, 1924, the city, with the consent of said company, deferred the consummation of said contract and the issuing of bonds and the payment of the purchase price for said plant, and renewed its efforts to find a purchaser with sufficient resources to furnish adequate service, and finally after diligent efforts succeeded in again interesting the officials of the Eastern Shore Gas and Electric Company in the purchase of said plant; that thereupon the city, in February, 1925, called another public meeting of citizens, which was attended by about seventy-five representative taxpayers, including some, if not all, the plaintiffs, and after full discussion a resolution was adopted, with only one or two dissenting votes, that the plant be sold and the con-

tract of purchase by the municipality be cancelled; that thereupon the agreement of April 17th, 1925, was made, under the terms of which the Worcester Electric Company is to become the purchaser, in the place of the Mayor and Council of Snow Hill, of the said plant with all privileges and appurtenances, at and for the sum of $16,000, reserving however to the city all cash on hand and all bills, notes, and accounts, said price to be apportioned between the city and the new company according to their respective rights, and by agreement between the city and the old company, the old company is to receive only its original contract price of $15,000 with interest from July 1st, 1924, and the balance, together with the cash, bills, notes and accounts reserved, to belong to the city, whereby the city will realize a net profit of not less than $3,500; that at the town election held in Snow Hill on the first Monday in May, 1925, the sale of the lighting plant was made an issue, and the candidates favoring the sale were elected by a majority of about fifty-three in a total vote of about two hundred and eighty-one; that the Worcester Electric Company is a subsidiary of the Eastern Shore Gas and Electric Company, formed for the purpose of the purchase and operation of said plant, with the same officers, and its entire capital stock will be issued to the parent company, which plan has been duly approved by the Public Service Commission by orders duly passed, copies of which are filed as exhibits; that if the agreement of April 17th, 1925, is consummated it will mean a cash profit to the taxpayers of Snow Hill of at least $3,500 and an efficient electric service for light, heat, and power, at a fair and reasonable cost to consumers; while if said consummation is prohibited it will mean an expenditure of at least $45,000, of which only $20,000 is now authorized, or else an inadequate service from an antiquated plant at an initial capital cost of $15,000, with constant repair and maintenance costs.

Plaintiffs demurred to the answer of the city, and the case was heard on this demurrer and on the demurrers to the bill. The court overruled the demurrers to the bill and sustained the demurrer to the answer, and enjoined the Mayor and

Council of Snow Hill "from consummating the sale of the electric light plant in Snow Hill, as contemplated by the memorandum of agreement filed herein with the bill of complaint, and marked 'Complainants' Exhibit B', or in any other manner selling or disposing of the same or any right, title, or interest that it may have therein."

The appeal is from that decree, and the single question involved is that stated at the beginning of this opinion.

We find no error in the ruling of the trial court. It is supported by the great weight of authority. The principle is that all such property is held by the municipality in trust for the use and benefit of its citizens and is dedicated to the use of the public, and the law will not permit the corporation to divest itself of the title, without special authority from the Legislature. 3 *Dillon's Municipal Corporations* (5th Ed.), sec. 1301; 3 *McQuillin's Municipal Corporations,* sec. 1141; 19 *R. C. L.* p. 772, and cases there cited. The only cases to the contrary cited by appellants are *Carlisle Gas and Water Co. v. Carlisle,* 218 Pa. 554, and *Thompson v. Nemeyer,* 59 Ohio St. 486; and in the former it was the stock of a private corporation which it was held the city could sell and not an entire plant.

It is strongly contended by appellants that the right of the city to sell the plant is not the issue in this case, and this contention is based on the fact that the contract has not been fully complied with and the legal title has not been conveyed. But, as said by the trial court, "that which has not been done are those things which were to be done by the Mayor and Council of Snow Hill, that is, the sale of the bonds and the payment of the purchase price for the property, with the sole exception of the conveyance of the real estate by the Snow Hill Electric Light and Power Company to it, and this the Snow Hill Electric Light and Power Company was not to do until the Mayor and Council of Snow Hill had paid the purchase money for the plant. Why the bonds were not sold, or attempted to be sold, was, as shown by the contract of sale with the Worcester Electric Company, because at that stage in the transaction the Mayor and Council of

Snow Hill had received an offer from the Worcester Electric Company to purchase from it the property, and had con-. cluded to accept it if such sale could be lawfully made, thinking, as stated in the contract, that it was to the best interest of the citizens of the town that the sale should be so made to the Worcester Electric Company."

If the plant had not been turned over to the city the situation would be different. Then the city would have merely a contract to purchase, which right, it has been held, could be sold by the city under its general power to sell and convey property which has not been dedicated to public use. 3 *Mc-Quillin's Municipal Corporations,* sec. 1141. But in the present case, as the vendor has parted with possession and has only a vendor's lien, and the city is in possession of the plant and operating it, it has certainly been dedicated to the public use. It is further contended by appellants that, under the broad powers vested in the Public Service Commission, it was intended it should exercise many of the functions which were formerly exercised by the Legislature, including the power to authorize a municipality to sell property dedicated to the public use. But great as were the powers con· ferred upon the commission, we cannot agree that they include the power here contended for. The powers conferred upon the commission are of a regulatory nature. They do not include either the granting or withdrawal of franchises, although the exercise of rights under franchises duly acquired by private corporations and of powers acquired by municipalities under legislative grants may be permitted or prohibited by the commission, subject to the right of appeal, in cases provided for by the Public Service Commission Acts. We find nothing in these acts which can be construed as giving jurisdiction to the commission to authorize the sale by a municipality of property dedicated to a public use, and we have been referred to no decision anywhere which has so held.

If the facts alleged in the answer filed by the city are true (and they are admitted by the demurrer for the pur-

poses of this case), the conclusion we have felt compelled to reach is regrettable. The remedy, however, lies with the Legislature. Fortunately that body is now in session and speedy relief may be obtained if it is the wish of the taxpayers of Snow Hill.

*Decree affirmed, with costs to appellees.*