CHARLES COUNTY SANITARY DISTRICT, INC.
*v.* CHARLES UTILITIES, INC.

[No. 94, September Term, 1972.]

*Decided January 9, 1973.*

The cause was argued before MURPHY, C. J., and MCWILLIAMS, SINGLEY, SMITH and LEVINE, JJ.

*Richard J. Clark* and *Edward S. Digges* for appellant.

*Naji P. Maloof* for appellee.

LEVINE, J., delivered the opinion of the Court.

This dispute had its formal beginning when appellee, Charles Utilities, Inc. (Charles) filed an action at law seeking declaratory and injunctive relief against appellant, Charles County Sanitary District, Inc. (the District). This appeal by the District is from a judgment declaring that Charles "has a valid franchise to operate as a water and sewerage company within . . . that part of Charles County . . . lying within a circle with its

center in the intersection of State Highways 227 and 210 with a radius of one mile," and enjoining the District from exercising its powers so as to compete with Charles in the franchised area. Thus, the single issue framed by this appeal is whether Charles actually had acquired that franchise.

Charles came into existence on November 15, 1956, when its Articles of Incorporation were filed with the State Tax Commission. According to the Articles, the principal purpose for its formation was furnishing "the lot owners, householders and/or business establishments in the area and elsewhere in Charles County, Maryland, with water or utilities deemed expedient by the directors." The filing of the Articles was acknowledged by a written notice which said that they had "been received and approved by the State Tax Commission of Maryland."

Thereafter, on January 23, 1957, pursuant to an application filed by Charles, and a finding that the exercise of its *franchise* was necessary and convenient for the public service, an order approving the *exercise* of the *franchise* granted to it by its certificate of incorporation, and authorizing the issuance of 1,000 shares of common stock of the par value of $10.00 per share was passed by the Public Service Commission of Maryland (the PSC). The order had been sought "in connection with the construction of a water supply and distribution system at 'South Hampton Village' and 'Bryan's Road' in the Seventh Election District of Charles County."

At the proceedings before the PSC, Charles exhibited certain plats to outline the area in which it proposed to furnish its service. The effect of that evidence, coupled with the testimony of Charles's president, was to demonstrate that the terms "South Hampton Village" and "Bryan's Road," in fact meant a subdivision under construction by a company called "Brookside Homes, Inc."

On December 7, 1960, Charles filed Articles of Amend-

ment to its corporate charter to add as one of its purposes the following:

"To own, operate and manage water systems and sewerage systems for the purpose of supplying water and disposal of sewage to persons, firms or corporations owning property or living in the area known as 'North Indian Head Estates' or additions thereto or in the vicinity thereof [sic] Bryans Road, Maryland, in Charles County, Maryland."

Thereafter, Charles filed a further application with the PSC, which on March 22, 1961, upon a finding that it was necessary and convenient for the public service, authorized "the *exercise* . . . of the *franchise* granted to [Charles] by its Certificate of Incorporation as amended," and the issuance of a $50,000 note for a loan (emphasis added). In that application to the PSC, Charles stated that its intention was to exercise the "proposed franchise sewer and water company" in "Bryan's Road in the Seventh Election District of Charles County." Notice of the hearing to be held before the PSC was published by Charles. Ignoring a specific request from the PSC, Charles furnished no consent to its application from the Charles County Commissioners. To establish the area to be covered by that application, Charles produced at the hearing several plats for a subdivision known as "North Indian Head Estates." This was also confirmed by testimony at the hearing.

Charles operated within the areas it had designated to the PSC until November 18, 1969, when it wrote to the Charles County Health Department that, due to an increase in its "water and sewer plant facilities," it was in a position to "extend a limited number of services beyond the reservations of North Indian Head Estates." As critical problems had arisen by then with regard to sewage disposal in that general area of Charles County, the Health Department responded with alacrity to the

suggestion made by Charles. Several commercial locations which were experiencing acute problems, including a trailer park, were encouraged by the health authorities to avail themselves of Charles's expanded services, and apparently did so without prior approval or consent of either the County Commissioners or the District. These extensions were outside the area recognized as North Indian Head Estates.

Ultimately, when it occurred to Charles that approval or consent of the District was required for any extensions beyond North Indian Head Estates, it submitted plans for extending its sewerage service to the trailer park facilities known as the Lund property.

Upon receipt of Charles's plans, the District referred them to its consulting engineers for review. The engineers reported back that the proposed extensions did not lend themselves to future incorporation in an interceptor sewer project planned by the District for completion in 1974, one reason being that the existing lines Charles proposed to extend were not of sufficient depth. In sum, it would not be inaccurate to describe the engineers' reaction to the proposal as unenthusiastic. Indeed, somewhat prophetically, they cautioned the District that if it approved the plan, it should make it "completely clear . . . that such a permit does not in any way lend a cloak of legitimacy to a claim of a 'franchised area' embracing the area thus temporarily served, nor does it imply an intent or willingness to purchase these new facilities at some future time."

The engineers' advice did not go unheeded. Recognizing "the existence of an unusual health problem as to sewage," the District signified its willingness to grant approval subject to a number of conditions. Among them were the following:

> "1. The [District], by granting of a permit for construction of the extension of the sewer lines, does not recognize nor does it give its ap-

proval of any franchise to [Charles] beyond the bounds of North Indian Head Estates. The [District] does not recognize the existence of the water mains and/or sewer lines as illegally constructed by these companies without the necessary permits being first obtained from the [District].

* * *

"4. The [District] does not give permission for hook-ups on any lines not reviewed and located outside of North Indian Head Estates.

* * *

"6. The permit will cover construction of these two sewer lines only and no construction is to commence until the actual permit is issued by the [District] at which time a copy of the permit will be forwarded to the State Board of Health, and the Public Service Commission."

Being either unable or unwilling to live with the conditions attached to the approval, Charles elected to sue in the Circuit Court for Charles County, from which the action was removed to Calvert County. It alleged therein that, although its facilities had previously been confined to the development in the Bryan's Road area known as "North Indian Head Estates," recently its service had extended outside that area. That, due to a crisis caused by "raw and untreated sewage in the Bryan's Road area," the local office of the State Health Department had authorized certain necessary extensions to alleviate that problem, at a considerable cost to Charles. In this connection, it alleged it had received authorization to extend further service to the trailer park property, but had been effectively prevented from supplying it by the onerous conditions imposed by the District. Hence, it prayed for appropriate declaratory and injunctive relief, and in addition, for certain monetary damages, the asserted grounds for which are not here relevant.

The District was created in 1957, pursuant to what was then Code (1957) Art. 43, § 646. Its incorporation papers filed at that time provided that it was "created for the purpose of providing for the public health and welfare, and . . . for the purpose of acquiring, holding, constructing, reconstructing, repairing, improving, maintaining and operating, owning, leasing either in the capacity of lessor or lessee, water systems, sewage systems and improvements, and other related projects within Charles County, Maryland, by action of whose governing body the District was created."

After the trial, in the course of which there was extensive testimony and documentary evidence which we have endeavored to briefly summarize, Judge Bowen handed down an opinion in which, in pertinent part, he said:

> "Dealing with the basic question involved *the Court concludes that incorporation of the Plaintiff coupled with the approval of its application for its operation by the Public Service Commission constituted a franchise* for it to do business within the territory referred to in the hearing before the Public Service Commission. To locate and determine the extent of that territory we have examined the records of the Public Service Commission. The Court concludes that the territory conferred by that franchise includes at least all of that part of Charles County lying within a circle with its center on the intersection of State Highway 227 and 210 with a radius of one mile. Within that territory the company may operate without further permission from the Defendant. The Defendant is enjoined from exercising its powers in such a way as to compete with the Plaintiff by Article 43, Section 651. . . ." (emphasis added).

As we indicated at the outset, his order granted relief consistent with that opinion.

Charles is in the unenviable position of stemming what, to it, must surely appear as a running tide of statutory and decisional law. To begin with, there was nothing in the process of incorporation which granted to it a franchise. When it became incorporated in 1957, principally for the purpose of supplying water, it was directly controlled by Code (1957) Art. 23, § 332, which, in relevant part, provides:

"Any corporation which may be formed under the provisions of this article for the purpose of supplying water shall have power to acquire, possess and use all such land, water rights and other property, and shall have all such power as may be necessary for the purposes for which said corporation was formed. And shall also have power to lay pipes and construct all such other works as shall be necessary or suitable to carry out the purposes of said corporation; *provided, . . . the assent of the county commissioners of said county shall be first had and obtained. . . .*" (emphasis added)

Charles does not claim that it received express consent from the County Commissioners of Charles County. Although it contends that it received such "assent" by reason of the County Commissioners' failure to contest the proceedings before the PSC, we think it clear that the "assent" required by § 332 was intended by the legislature to be express and not something to be inferred from mere silence. Hence, the "assent" requirement of § 332 was not met.

While we are unwilling to read § 332 as being applicable to corporations formed for the purpose of supplying sewerage systems, in no event did the amendment to its charter, including sewerage as one of its purposes, constitute the grant of a franchise. We think that even in the absence of a statutory requirement such as that contained in § 332, the acceptance of the incorporation

papers, or amendments thereto, by the State Tax Commission could not have constituted the grant of a franchise to Charles as either a water or sewerage company. Since the power to grant a franchise is a legislative function, *Cambridge v. Eastern Shore Public Service Co.*, 192 Md. 333, 339, 64 A. 2d 151 (1949), a franchise may be granted only by the legislature or by a municipal corporation to which that power has been delegated. *Water Co. v. Baltimore County*, 105 Md. 154, 162, 66 A. 34 (1907). *See also Kelly v. Consolidated Gas, Elec. Light & Power Co.*, 153 Md. 523, 138 A. 487 (1927).

Nor did the orders of the PSC, on either occasion, confer a franchise upon Charles. That body cannot grant a franchise, *Cambridge v. Eastern Shore Public Service Co., supra,* 192 Md. at 339; *Kelly v. Consolidated Gas, Elec. Light & Power Co., supra; Worcester Elec. Co. v. Hancock,* 151 Md. 670, 678, 135 A. 832 (1927) ; as it is regulatory in nature, *Cambridge v. Eastern Shore Public Service Co., supra; Electric Pub. Util. Co. v. Public Serv. Comm'n,* 154 Md. 445, 140 A. 840 (1928) ; *Worcester Elec. Co. v. Hancock, supra;* and, as we have already observed, the granting of a franchise is a legislative function.

Here, as with its reliance upon the "incorporation" argument, Charles is again met by a statutory barrier in addition to the case authority we have just cited. Code (1957, 1969 Repl. Vol.), Art. 78 § 24 provides:

> "(a) *Exercise of franchise.*—Hereafter, no public service company shall exercise any franchise granted by law except to the extent authorized by the Commission.

> \* \* \*

> "(d) *Prerequisite to grant of authority under subsection (a).*—No authority shall be granted under subsection (a) of this section unless the company has filed with the Commission a certified copy of its charter and a statement,

under oath, of its president and secretary, that it has received the *required consent of the proper local authorities.*" (emphasis added)

It is interesting to note in this connection that, notwithstanding the clear requirement of § 24, Charles alleged in each of its respective petitions to the PSC in virtually identical language that the consent of the Charles County Commissioners was not required. That allegation appeared to satisfy the PSC on the "water" petition, but when the "sewerage" petition was received, Charles was asked to submit "proof of the consent of the municipalities and counties having jurisdiction." Once again demonstrating that "nothing succeeds like success," Charles blithely ignored that request but yet obtained PSC approval.

Since neither incorporation nor PSC approval singly conferred franchise status, just as two times zero equals zero, the combination of those actions did not constitute the grant of a franchise. Thus, the conclusion of Judge Bowen that they had was erroneous.

Nor can it be argued that the action of the State Department of Health in ordering the several commercial establishments, including the trailer park, to hook up to Charles's existing facilities, constituted the granting of a franchise. While the powers of that department, as extensively enumerated in Article 43, are far-reaching, and clearly permit it to issue the orders which it did here, nothing contained therein delegates to it the authority to grant a franchise such as that claimed by Charles.

Furthermore, the action of the District in attaching conditions to approval of the extension permits sought by Charles was well within the power it possessed by virtue of Code (1957, 1971 Repl. Vol.) Art. 43, § 660, which, in pertinent part, provides:

". . . No private or semipublic water supply or sewerage installation, intended for the use of

> two or more buildings or premises, shall be constructed in any sanitary district without the person, firm or corporation doing the work having first obtained a permit from the commission [District] and paid a reasonable charge therefor, and such plant shall then be installed, maintained and operated under such rules and regulations as the commission [District] may require or devise. . . ."

Although that requirement, as well as the District itself, had existed at least as early as 1961, when Charles first entered the sewerage field, it appears that until it sought the permit in 1970, Charles made no greater effort to comply with § 660 than it had with the previously-mentioned statutory requirements.

A subsidiary question is presented by the contention that, even if it failed to obtain the necessary consent of the local authorities, which, we note in passing, would have been the equivalent of a franchise, *Kelly v. Consolidated Gas, Elec. Light & Power Co., supra,* Charles, nevertheless, obtained a franchise by estoppel. It bases that argument on the failure of the County Commissioners or the District to contest the PSC proceedings, and the District's initial acquiescence while Charles, at great expense, furnished services to the several commercial establishments in the area of Bryan's Road.

The heart is undoubtedly cut out of the estoppel argument by our holding that the PSC does not possess the power to grant a water or sewerage franchise. Moreover, the approval which it did give was clearly defective, since the local consent requirement of § 24 was not met. Viewed in that light, the actions of the PSC, if regarded as the grant of a franchise, were illegal; and thus estoppel cannot be invoked against the District. *Cf. City of Hagerstown v. Long Meadow,* 264 Md. 481, 495-96, 287 A. 2d 242 (1972).

In 37 C.J.S., *Franchises,* § 19, the proposition is specifically put:

"The state, a political subdivision, or the public is not estopped to question the right to use or exercise an alleged franchise which has been granted without authority, and which was accepted with knowledge of its character, even though the grantee has expended money and has changed his position in connection with, or on the faith of, the alleged franchise . . . ."

We have noted that notwithstanding the gloss it now puts on the scope of its operations, Charles's own evidence before the PSC on both occasions and in the circuit court, established that its services had been confined to the South Hampton Village and North Indian Head Estates subdivisions. We infer from the record that it continues to operate in those communities at this time, and that the District is not disposed to supplant it. At oral argument before us, the District, although resisting any claim of a franchise for even those limited areas, either on the basis of express grant or estoppel, declared its approval to a continuation of the limited operations. The effect of the District's concession is that, although it does not possess a franchise, Charles may continue to furnish its water and sewerage services in the two subdivisions.

*Reversed and remanded for passage of a decree conformable to the views expressed herein; appellee to pay costs.*