THE EDISON ELECTRIC ILLUMINATING COM-
PANY OF BALTIMORE CITY *vs.* ALCAEUS
HOOPER, Mayor of Baltimore City, and JANON
FISHER, City Commissioner.

*Electric Light Companies—Right to Lay Conduits in Streets of Balti-
more City—Assent of Mayor and City Council.*

Under Code, Art. 23, sec. 111, and the Act of 1890, chap. 233, the ap-
pellant being an electric company, formed in pursuance of the Act
of 1892, chap. 666, by consolidation of the companies mentioned in
the Act of 1890, is not authorized to dig up the streets of Baltimore
City for the purpose of laying conduits for wires without an ordi-
nance of the Mayor and City Council authorizing the same to be
done.

The sole effect of the Act of 1890, chap. 233, was to enable the cor-
porations named therein to exercise the franchise of electric light
and power companies in Baltimore City, subject, however, to the
provisions of the Act of 1890, chap. 370, which expressly empower
the Mayor and City Council to regulate the use of the streets by
electric light and other companies.

Corporations formed under Code, Art. 23, sec. 24, for the construction
of telegraph and telephone lines are required by Code, Art. 23, sec.
254, to obtain the assent of the Legislature and of the Mayor and
City Council before using the streets of Baltimore City.

Appeal from a judgment of Baltimore City Court
(PHELPS, J.), refusing the writ of *mandamus* asked for by
the appellant.

The cause was argued before McSHERRY, C. J., BRYAN,
FOWLER, BRISCOE, PAGE, ROBERTS and BOYD, JJ.

*William S. Bryan, Jr.*, and *Nicholas P. Bond* (with whom
was *Hugh L. Bond, Jr.*, on the brief), for the appellant.

*Thomas G. Hayes, City Counsellor*, and *Thos. Ireland
Elliott, City Solicitor*, for the appellees.

BRISCOE, J., delivered the opinion of the Court.

On the 8th of May, 1896, the appellant, the Edison Electric Illuminating Company of Baltimore made application to the City Commissioner, one of the appellees, for a permit to dig up and uncover certain of the streets of Baltimore for the purpose of laying and constructing a system of conduits or trenches to contain its conductors for transmitting electricity to be used for electric light and power in accordance with sections 157 E, 157 F, 157 G, of Article 48 of the Baltimore City Code of 1893. The application states its object to be to obtain permission to dig up, tear up or uncover the streets mentioned in the application, so far as may be necessary for the purpose of constructing or building its lines or conductors and for the purpose of connecting the said lines or conductors with any manufactory, public or private buildings, lamps or other structure or object. It further states : "It is the object of this application to remove all wires owned by the company on the streets named and substitute for the same lines or conductors laid underground, in accordance with what is known as the Edison system ; the right to construct or build said lines or conductors having been granted to both of the companies, by the consolidation whereof this company was formed, by the Act of 1890, ch. 233."

This application was refused by the City Commissioner for the reason as stated by him, "I must decline to issue such a permit, having been advised, by one of the city's law officers that in the absence of an ordinance granting your company the right to construct conduits, I would have no right to do so." Whereupon the petition in this case was filed for a *mandamus*, to require the City Commissioner to issue and the Mayor of Baltimore City to approve a permit to the appellant for the purpose mentioned therein. The case was tried below before the Court and from a judgment in favor of the defendants, this appeal has been taken.

The controlling question then is, was it necessary that the assent of the Mayor and City Council of Baltimore

should be given by ordinance, to the appellant to use the streets for its trenches, before it was entitled to demand and require the appellee to issue the permit in question, or did the Act of 1890, chapter 233, confer this right, without such ordinance. This involves a construction of this Act, and the intent of the Legislature in its passage and what are the powers conferred by it on the corporations therein named.

. The Act declares that it is an amendment to the charters of the corporations named in it, and that these corporations were incorporated under the General Incorporation Act of the State, Article 23 of the Code. The words of the amendment as contained in the Act are as follows: " They are hereby authorized to transact any business in which electricity over or through wires may be applied to any useful purpose, and to that end all the rights and privileges mentioned in section 111 of Article 23 of the Code, title Corporations, are hereby conferred upon said corporations in Baltimore City, as fully and to all intents and purposes as though said corporations had been formed to carry on any business in any city or town of Kent or Talbot Counties and all Acts or parts of Acts inconsistent herewith are hereby repealed." And section 111 of Article 23 of the Code was made a part of this Act. It appears by this last named section that the franchise or corporate capacity of being an electric light or electric power company was conferred on certain corporations named in it, specifying their powers and where they could be exercised, but it was provided that nothing contained therein authorized the incorporation of electric light companies for the purpose of carrying on business and conducting operations in Baltimore City.

It is clear then, that as the constituent corporations of the appellant were incorporated under the 23d Article of the Code, they did not possess the franchise of carrying on the business of electric light companies in the city of Baltimore, prior to the passage of the Act of 1890. Does this Act,

then, empower them to both carry on the business of an electric light company, and to conduct its operations in the streets of Baltimore, as contended for on the part of the appellant? The only power, we think, conferred on these corporations and the appellant, under the Act, is the franchise of being an electric light company in Baltimore and confers no right or privilege to use the streets of Baltimore without the assent of the Mayor and City Council of that city by ordinance duly passed. The language of the Act in question in connection with the previous legislation on this subject shows this to have been the only intent of the Legislature in passing it. The first part of the Act provides as to the corporations named that they "are hereby authorized to transact any business in which electricity over or through wires may be applied to any useful purpose." Now, if the Act had stopped or ended here no right or privilege would have been conferred because of the prohibitory clause in section 111. But there is added this provision, "and to that end all the rights and privileges mentioned in section 111 are conferred upon said corporations in Baltimore City as fully and to all intents and purposes as though said corporations had been formed to carry on business in any city or town of Kent or Talbot Counties." There is no special grant or privilege here conferred by this Act to use the streets for constructing conduits without the assent of the Mayor of Baltimore and of its City Council.

The sole effect of the Act was to enable the corporations named and the appellant, to have the franchise of an electric light and power company which they did not possess prior to the passage of the Act, and to permit the operation of those corporations in Baltimore City, as in Kent and Talbot Counties, subject, however, to the paramount right and power of the municipality to regulate and maintain the streets of the city for the use of the public.

And this construction, we think, is strengthened by reference to the contemporaneous legislation on this subject, as provided by chapter 370, of the Acts of 1890. But apart from

this it appears by Article 23, sec. 254 of the Code, which is a codification of sub-section 175 B of section 2 of the Act of 1886, chapter 161, and a part of the charter of the corporations of the appellant, as well as the appellant, that all corporations incorporated or to be incorporated by virtue of said section 24, class 11, except such corporations of said class as are now in practical operation and have laid or constructed their lines or any part thereof, in the city of Baltimore, shall obtain a special grant from the General Assembly of Maryland and the assent and approval of the Mayor and City Council of Baltimore before using the streets or highways of Baltimore, either the surface or the ground beneath the same.

And it further appears that both of the corporations of the appellant come under class 11, by the terms of their charter, and were not in practical operation or had constructed their lines, in the city of Baltimore, prior to the date of the approval of the Act of 1886. It therefore follows, that by virtue of the requirements of this last named Act, the appellant must obtain the assent and approval of the Mayor and City Council as well as a special grant from the General Assembly, before it is lawfully entitled to the relief asked under this petition.

Nor are we aware of any law, or rule of construction, even should it be conceded, that the grant in question is ambiguous, by which the position of the appellant can be maintained. It is a well-settled rule of statutory construction, says the Supreme Court of the United States in *Central Transportation Company* v. *Pullman's Palace Car Company*, 139 U. S. 24, that "every public grant of property or of privileges or franchises, if ambiguous, is to be construed against the grantee and in favor of the public, because an intention on the part of the government to grant to private persons, or to a particular corporation, property or rights in which the whole public is interested, cannot be presumed, unless unequivocally expressed or necessarily to be implied in the terms of the grant and because the grant

is supposed to be made at the solicitation of the grantee, and to be drawn up by him or by his agents, and therefore the words used are to be treated as those of the grantee ; and this rule of construction is a wholesome safeguard of the interests of the public against any attempt of the grantee, by the insertion of ambiguous language, to take what could not be obtained in clear and express terms."

Our conclusion then is that there was no duty imposed on the appellees in this case to issue to the appellant the permit in question. There being then no error in the rejection of the appellant's prayers and in dismissing the petition for *mandamus*, the judgment will be affirmed.

*Judgment affirmed with costs.*