## SUI *v.* McCOY, INSULAR COLLECTOR OF CUS-TOMS OF THE PHILIPPINE ISLANDS.

### APPEAL FROM THE SUPREME COURT OF THE PHILIPPINE ISLANDS.

No. 54. Submitted November 1, 1915.—Decided November 29, 1915.

The Immigration and Chinese Exclusion Laws of the United States have been carried by act of Congress to the Philippine Islands and authorized to be there put into effect under appropriate legislation by the Insular Government which has so done and in express terms conferred general supervisory authority upon the Insular Collector of Customs.

There is no conflict between the provisions of the act of Congress carrying the Immigration and Chinese Exclusion Acts to the Philippines and the action of the Collector in referring questions relating to the right of a Chinese person to land and to a board in which the power was lodged to act under his supervision in matters concerning immigration.

In this case, *held* that an order for deportation of a person of Chinese descent from the Philippine Islands under the Chinese Exclusion Act was not improperly entered either because of abuse of power by the Insular Collector in referring the matter to the board of inquiry

established under the Immigration Act nor does the record show that such person was denied due process of law by the disregard of testimony produced on his behalf.

21 Phil. Isld. 361, affirmed.

THE facts, which involve the validity of an order of deportation of a Chinese person from Manila and the judgment of the Supreme Court of the Philippine Islands sustaining the same, are stated in the opinion.

*Mr. Clement L. Bouvé* for appellant.

*Mr. S. T. Ansell* for appellee.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

Chieng Ah Soon, a Chinese merchant residing in Manila, proposing to go to China, took a certificate which was susceptible of being used to identify him for the purpose of reëntry in case of his return. About a year afterward, July 19, 1910, Ah Soon returned accompanied by two persons asserted to be his minor sons, one Ah Luy, said to be twenty, and the other, Ah Sui, to be sixteen years of age. His right to land was at once conceded, but the right of the two others being questioned, the Insular Collector referred the matter for inquiry and report to a board which was charged with the duty of considering such question. At once this board heard the testimony offered to prove the right to admission and concluded that Ah Luy had established such right, but that Ah Sui had not. An appeal was prosecuted to the Collector, but before the matter was decided by him on the merits a rehearing was granted presumably by the board and it again heard the matter on July 23, 1910. At the rehearing additional testimony was offered by Ah Sui, but after reëxamination of the matter and considering such testimony, the board adhered to its former conclusion. An appeal was taken

to the Collector and once more before it was decided a second rehearing was allowed and on August 10, 1910, after hearing additional testimony, the original order was again re-affirmed.  This last decision was on September 3, 1910, affirmed on appeal by the Insular Collector and on September 15 an application for rehearing was refused and Ah Sui remained, therefore, in the custody of the Collector for deportation.

At once he applied for *habeas corpus* to the Court of First Instance of the City of Manila asserting the illegality of his detention for deportation and his right to land as a minor son of Ah Soon, on the following grounds: (a) An entire want of power in the Insular Collector to have referred the right to land to the board of inquiry and the resulting absolutely void character of the proceedings, whether appellate or otherwise, taken thereunder; (b) Even upon the assumption of existence of power, the absolutely void character of the action of the board and the Collector because of the entire disregard by both of the testimony establishing the paternity of Ah Soon and the resulting right of Ah Sui to land.  Although ruling against the assertion of want of power, the trial court yet granted the writ of *habeas corpus* and directed the release of the applicant on the ground of a gross abuse of discretion by the board and the Collector in refusing to give effect to the testimony showing the right to enter, although there was nothing in the proof tending to the contrary.  On appeal, the court below, after reviewing the testimony, held that there was no ground to support the conclusion reached by the trial court of arbitrary action and abuse of discretion by the board and the Collector in passing upon the right to land and therefore reversed the order releasing Ah Sui, thus leaving him in custody subject to deportation.  22 Phil. Isld. Rep. 361.

Our jurisdiction is invoked, first, upon the theory that the construction of statutes of the United States is neces-

sarily involved in the assertion of the want of all authority of the Insular Collector of Customs to have appointed the board which primarily determined the right to admission, and second, an assumed violation of the due process of law secured in the Philippine Islands by act of Congress arising from the action taken below because of its asserted arbitrary character caused by the alleged absolute disregard of the testimony establishing the right to enter and the absence of any testimony to the contrary. We come to dispose of these contentions separately.

1. That the Immigration and Chinese Exclusion Laws of the United States have been by act of Congress carried to the Philippine Islands and authorized to be there put into effect under appropriate legislation by the Insular Government, is not disputed. That such government has put such laws into effect and in doing so has in express terms conferred the general supervisory authority required for that purpose to be exerted upon the Insular Collector of Customs, is also not disputed. And that such officer under that authority has provided for a board of examiners primarily to determine, subject to his review, questions arising under the Immigration and Chinese Exclusion Laws, is also not disputed. The contention is based upon the supposed repugnancy to the act of Congress caused by the action of the Collector in giving to such board primary authority to examine under the Chinese Exclusion Acts. The argument is that although under the Immigration Acts provision is made for a board of examiners, no such provision is found in the Chinese Exclusion Acts, since under the latter, although an examination is provided for, it is left to be conducted under rules and regulations adopted by the appropriate authority and in the exercise of that power in the United States examining agents and not an examining board or boards are provided for by the regulations. Upon this and this alone is the conclusion rested that the making of a primary

examination under the Exclusion Acts by a board was in conflict with the United States statutes.

The extremity of the argument is well illustrated by considering the extent of the administrative power conferred by the Insular Government upon the Collector in delegating to him the authority to enforce the Chinese Exclusion Acts since by § 1 of Act No. 702 of the Philippine Commission enacted March 17, 1903, it is provided that "the Collector of Customs for the Philippine ·Archipelago is hereby authorized and directed . . . to employ for that purpose the personnel of the Philippine Customs Service, the provincial and military officers hereinafter provided, and such other persons as may be necessary." But aside from this we are of the opinion that the mere statement of the supposed conflict answers itself, since there is no room for real contention that there was a want of power in the Collector to appoint the board instead of an agent to aid him in the discharge of the duties devolving upon him. And we are also of the opinion that there was no ground whatever for the contention that a conflict arose between the act of Congress and the action of the Collector because the board selected was one in whom the power had been already lodged to act under the supervision of the Collector concerning matters of immigration.

2. So far as concerns the assertion that there was a violation of the due process of law secured in the Philippine Islands by act of Congress both because of the want of a hearing and the disregard of the testimony we are of the opinion that the first on the face of the record is completely answered by the statement we have made of the abundant opportunity which was afforded for a hearing, of the rehearings granted, and of the reiterated considerations which resulted by the board and the Collector, especially in view of the judicial consideration of the subject of the complaint made in the proceedings which cul-

minated in the decree which is before us for review. As to the charge of the total disregard of all the testimony, we might well content ourselves with referring to the opinion of the court below, but in view of the character of the case we say that from an examination of the record we think such contention is devoid of all merit.

*Affirmed.*