EDGAR C. KELLY, NORTHERN MARYLAND POWER COMPANY, ᴇᴛ ᴀʟ. *v.* CONSOLIDATED GAS ELECTRIC LIGHT AND POWER COMPANY OF BALTIMORE.

*Electric Company—Exercise of Franchise—In City Streets—
Challenge by Competitor—Consent of Public
Service Commission.*

That an electric company, actually operating lines through city streets, had no right to do so because of a lack of the city's consent, could not be asserted by a competing company seeking to construct lines through the streets, this being a subject for a direct proceeding by the city against the former company.

pp. 528, 529

An electric company, operating lines in the streets of Havre de Grace, could question the right of a competing company to extend its lines into that city without having first obtained permission to do so from the Public Service Commission. p. 529

Since the power to alter or repeal any special act of incorporation is reserved by Const., art. 3, sec. 47, there was no impairment of the obligation of a contract with the State by reason of the fact that an electric company, after having obtained from the Legislature charters granting it a state-wide franchise, was required by the Legislature to procure the consent of the city authorities before extending its operations to a particular city, this involving an amendment of its charters.          pp. 531-534

Acts 1902, ch. 127, providing that no use shall be made of the streets of Havre de Grace for the purpose of an electric light or power line, or similar purposes, without the consent of the Mayor and City Council, is a local law.          pp. 536, 537

An ordinance granting to an electric company the necessary consent of the city authorities to the use of the streets by the company is a "franchise" within Code, art. 23, sec. 33, requiring the permission and approval of the Public Service Commis-

sion in order that such a corporation may begin construction
or exercise any right under any franchise.          pp. 538, 539

Under Code, art. 23, sec. 398, making applicable to gas and
electrical corporations provisions in regard to railroads, taken
in connection with section 379, requiring the permission and
approval of the Public Service Commission before any railroad
corporation begins the construction of a railroad, or any exten-
sion thereof, such permission and approval are required in the
case of an extension of its lines by an electric company.
                                                    pp. 539-542

In the exercise of a state-wide or general electrical charter,
each town or aggregation of people in sufficient numbers to in-
duce a corporation to look upon the territory as promising a
profit should be regarded as a separate unit, and not as a part
of the whole state, to be served or not served at the corporation's
pleasure, and if the exercise of the charter is delayed in any
territory of the state, the delay is at the risk of legislation re-
straining, limiting, or repealing the charter as to such unoccu-
pied territory, and the exercise is subject to such regulations as
may be imposed by statute.                           p. 542

*Decided July 23rd, 1927.*

Appeal from the Circuit Court No. 2 of Baltimore City
(STANTON, J.).

Bill by Edgar C. Kelly, the Northern Maryland Power
Company, and others, against the Consolidated Gas Electric
Light and Power Company. From a decree dismissing the
bill, the plaintiffs appeal. Reversed.

The cause was argued before BOND, C. J., PATTISON,
URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Charles McH. Howard* and *Francis J. Carey,* with whom
were *Alexander Armstrong* and *Piper, Carey & Hall* on the
brief, for the appellants.

*E. M. Sturtevant* and *Charles Markell,* for the appellee.

SLOAN, J., delivered the opinion of the Court.

On April 13th, 1927, the Northern Maryland Power Company, a Maryland corporation, and twenty-one residents of the city of Havre de Grace, Maryland, purchasers and consumers of electricity in that city, filed their bill of complaint in the Circuit Court No. 2 of Baltimore City, against the Consolidated Gas Electric Light and Power Company of Maryland, also a Maryland corporation, praying the court to restrain and enjoin the defendant, now the appellee in the appeal before us, from constructing its electric lines along and upon the streets of Havre de Grace without first having obtained an order of the Public Service Commission of Maryland permitting and approving such construction; and to restrain and enjoin the appellee from exercising any right or privilege under the franchise granted to it on March 7th, 1927, by the Mayor and City Council of Havre de Grace, authorizing it to use the streets of Havre de Grace for the purpose of erecting thereon and therein its electric lines, without first having obtained an order by the Public Service Commission of Maryland permitting and approving the exercise of such right or privilege; and to restrain and enjoin the construction and extension of its electric lines from Short Lane, in the second election district of Harford County, to or in the direction of the city of Havre de Grace, without first having obtained an order from the Public Service Commission of Maryland permitting and approving such construction.  The court below dismissed the bill of complaint, and from this order the appeal is taken.

On the 4th day of April, 1899, the Mayor and City Council of Havre de Grace passed an ordinance entitled "An ordinance granting to John H. Reckord, his successors and assigns, the exclusive right to erect and maintain poles and wires upon the streets, lanes and alleys of the city of Havre de Grace for the purpose of furnishing electric current for light, heat, and power, etc., for public and private use and for the regulations governing the same," the first paragraph of the ordinance concluding, "and the privilege hereby granted is granted exclusively for a period of twenty-five years,

unless terminated as hereinafter provided," the only conditions as to termination being that the plant should be installed ready to supply electric light on or before May 1st, 1900, or a failure to operate for a continuous period of six months or more. Ever since the installation of his plant, Reckord and his assigns have operated in Havre de Grace. It appears from the testimony that in the summer of 1900 Reckord's electric light plant and system in Havre de Grace was transferred to the Havre de Grace Electric Company. The only record evidence of this transfer is a deed from John H. Reckord and wife to the Havre de Grace Electric Company, made and executed July 13th, 1900, conveying the parcel of land upon which the plant was located. Ordinance No. 171 of the town of Havre de Grace, approved March 2nd, 1903, provided for the execution of a contract, between the Mayor and City Council of Havre de Grace and the Havre de Grace Electric Company of Harford County, for lighting the streets, lanes, and alleys of Havre de Grace by electricity, and also re-enacted and confirmed Ordinance No. 147 of the Mayor and City Council of Havre de Grace, approved April 4th, 1899; the ordinance reciting in its preamble that by an amendment to the charter of Havre de Grace, contained in section 152 of chapter 127 of the Acts of Assembly of 1902, express power and authority was given the Mayor and City Council to contract for the lighting of the city by electricity. The proposed agreement was incorporated in the ordinance No. 171. By this agreement the Havre de Grace Electric Company agreed "to furnish for the term of twenty years, beginning on the 1st day of December, 1899, and ending on the 30th day of November in the year 1919, electric current for the purpose of lighting the streets, lanes, and alleys of the city of Havre de Grace with electric lights * * *." The contract also provided that "after the expiration of the term of this contract the party of the second part shall have a right to renew this contract for an additional period not exceeding twenty years, at the prices and upon the terms and conditions herein set forth." By Ordinance No. 277, approved February 10th, 1920, another

agreement was entered into between the Havre de Grace
Electric Company and the city of Havre de Grace for the
furnishing of street lights for the period of three years, be-
ginning the first day of December, 1919, with the right to
an additional period of two years from and after the first
day of December, 1922. On August 16th, 1926, by Ordi-
nance No. 234, the Mayor and City Council of Havre de
Grace entered into a contract with the Northern Maryland
Power Company, the appellant, for the installation on Union
Avenue and Commerce Street of a post type, or "white way"
system of lighting, to continue for a period of ten years, with
the provision for a refund of $850 per year for the unex-
pired portion of said ten-year period in case the city should
decide to discontinue the use of said system.

By Ordinance No. 310, passed by the Mayor and City
Council of Havre de Grace on April 21st, 1927, Ordinances
Nos. 147, 171 and 277 were repealed. By resolution of the
Mayor and City Council of Havre de Grace, passed at a
meeting held on January 3rd, 1927, the city clerk of Havre
de Grace was instructed to notify the Northern Maryland
Power Company that from and after the 30th day of June,
1927, its services to the city would be discontinued for all
purposes, and "that the Mayor and City Council of Havre
de Grace negotiate with the Baltimore Gas and Electric
Company (meaning the appellee), to furnish electric current
to the city of Havre de Grace and its citizens for such pur-
poses as may be desired, subject to the approval of the Public
Service Commission of Maryland as to service and rates."

The Havre de Grace Electric Company of Harford County
was incorporated under the general laws of the State of
Maryland on June 19th, 1900, the object and purposes for
which incorporation was sought, among other things, being
"for the transaction of any business in which electricity, over
or through wires, may be applied to any useful purposes;
the articles, conditions and provisions under which this cor-
poration is formed are those applicable to corporations
formed under the general corporation laws of the state of
Maryland," and "the operations of said corporation are to

be carried on in and beyond the state of Maryland, and its principal office is to be located at Havre de Grace in Harford County in said state." The time of the existence of said corporation was fixed in its charter at forty years, which has since been made perpetual by the general laws of this state. By agreement of consolidation made on April 20th, 1927, the Havre de Grace Electric Company of Harford County and three other electric light and power companies were consolidated under the general laws of the state under the name of the Northern Maryland Power Company, and the latter succeeded to all the rights, powers and franchises of the constituent corporations.

It is contended by the appellee that the Northern Maryland Power Company has no standing in this court because, so far as the city of Havre de Grace is concerned, it has no existence; that its franchises there have expired and that it is in effect a trespasser. The Northern Maryland Power Company contends that it had, through the franchise granted to Reckord on April 4th, 1899, an exclusive franchise for the period of twenty-five years (if the city of Havre de Grace had the authority to grant an exclusive franchise), and thereafter, a perpetual franchise, without any other conditions than those recited in Ordinance No. 147; and they cite, as authority for this contention, *Des Moines City Ry. Co. v. Des Moines,* 151 Fed. 854. The Des Moines case was appealed to the United States Supreme Court and reversed on jurisdictional grounds, the Supreme Court suggesting that the right of the city of Des Moines to oust the railway was the proper subject of a direct proceeding by the city to determine the question (214 U. S. 179, 53 L. Ed. 958). The appellee is not in a position to dispute, under its own claim of a state-wide franchise, the right of the appellant, the Northern Company, to exercise the charter rights of the Havre de Grace Electric Company in Havre de Grace, as conferred by section 337 of article 23 of the Code of 1924, this provision having been in effect when the Havre de Grace Electric Company was chartered in June, 1900, nearly two years before the charter of the city of Havre de Grace

was amended by the Act of 1902, chapter 127.   Reckord
had his plant in operation December 1st, 1899, sold it to
the Havre de Grace Company in July, 1900, and it has ever
since been operated by it and its assigns.   In *New York,
N. H. & H. R. Co. v. Deisler,* 253 Mass. 178, the court said:
"The plaintiff may maintain its suit for an injunction.   It
has a franchise right to transport passengers between the
points named.   That right carries with it heavy obligations
to the public.   Although that franchise right is not exclu-
sive against other grants authorized by the Legislature, it is
exclusive against one conducting competition, as is the de-
fendant, without a franchise or license and contrary to law."
*Dillon on Municipal Corporations* (5th Ed.), sec. 1244; 29
*L. R. A.* (N. S.) 77; *Citizens Electric Illuminating Co. v.
Lackawanna and Wyoming Valley Power Co.,* 255 Pa. 145.

The Northern Maryland Power Company has a plant and
system now operating in Havre de Grace, with sufficient
apparent show of interest and value for us to hold, until and
unless otherwise decided in a direct proceeding by the city
of Havre de Grace, that it has a right to maintain this suit.

The appellee was incorporated by an agreement of con-
solidation of several electric light corporations under the
provisions of what are now sections 33 *et seq.,* of article 23,
of the Code of 1924.   The first of the constituent corpora-
tions was the Brush Electric Company of Baltimore City,
incorporated under the General Laws, on March 4th, 1882,
(amended Acts 1890, ch. 233), the incorporators reciting in
their certificate of incorporation that "the operations of said
corporation are to be carried on in the City of Baltimore
and in the counties of the State of Maryland."   The next of
the corporations formed under the General Laws was the
International Telegraph District and Construction Company
of Baltimore City, to operate telegraph lines in the State
of Maryland, September 23rd, 1884, the certificate of incor-
poration having been amended December 14th, 1888, by add-
ing, "that said corporation shall also be a corporation for
the transaction of any business in which electricity over or
through wires may be applied to any useful purpose."   The

next constituent, "The Southern Electric Company of Baltimore," was incorporated under the General Laws February 20th, 1889, the operations to be carried on in the State of Maryland and other states in the Union. The name of the Southern Company was changed to the Maryland Electric Company on May 6th, 1890. The Wenstrom Electric Company of Baltimore City was incorporated under the General Laws October 2nd, 1893, the operations "to be carried on in the State of Maryland and in other states and countries." On December 23rd, 1895, the Edison Electric Illuminating Company of Baltimore City was formed · under section 29, article 23, of the Code of 1888, by the consolidation of the International Telegraph District and, Construction Company and the Maryland Electric Company, for the purpose of doing a general electrical business, "also the transaction of any business in which electricity over or through wires may be applied to any useful purpose," and "shall be entitled to all rights, privileges and franchises" of the constituent companies. Both of the corporations combined as the Edison Company come under class 11, article 23, Code of 1888 (class 13, article 23, Code of 1904), by the terms of their charters, and were not in practical operation or had not constructed their lines in the city of Baltimore prior to the date of the approval of Acts 1886, ch. 161. By agreement of May 6th, 1899, "The United Electric Light and Power Company" was formed for the same purposes by the consolidation of the Edison and Brush companies, and by agreement of February 14th, 1905, the Consolidated Gas, Electric Light and Power Company was formed by the consolidation of the United Electric Light and Power Company and the Wenstrom Electric Company.

This case is based on the claim of the appellee that, under its several charters and each of them, it has the right to extend its operations over the State of Maryland wherever and whenever it pleases it so to do, and that it had a right to extend its operations in April, 1927, into the city of Havre de Grace, without the consent of the municipal authorities of that city, and without the approval of the Public

Service Commission of Maryland, under what it calls its "state-wide franchise" under section 337 of article 23 of the Code of 1924, which is as follows: "Any of the corporations formed under class 13, section 28, of this article, as codified by the Code of 1904, shall have the power which is conferred upon telegraph companies by section 295" (the right to construct lines on and along streets, highways, etc.), with the proviso that all corporations incorporated under class 13, and all corporations incorporated or to be incorporated under the Act of 1908, shall obtain the assent and approval of the Mayor and Council of Baltimore before using the streets of Baltimore City. This was section 366 of chapter 240 of the Acts of 1908, and is an amendment of chapter 161 of the Acts of 1886 (Code of 1888, art. 23, sec. 254), which required a special grant from the Legislature, as well as the assent of the Mayor and City Council of Baltimore, before use of the streets of Baltimore by an electric company.

By Acts 1902, ch. 127, the charter of Havre de Grace was amended by the addition of the following provision: "No use shall be made of the streets of said city by any individual or corporation for the purpose of a railroad, tramway, telegraph line, telephone line, electric light or power lines, electric subways, or gas or water conduits, without the consent of the Mayor and City Council, and subject to such franchise tax and regulations as they may by ordinance prescribe," and this was re-enacted by chapter 482 of the Acts of 1924, and designated as section 308 of article 13 of the Public Local Laws. This is the act which the appellee contends impairs the obligation of its contract with the State in the exercise of its state-wide franchise under its several charters.

So far as the appellee is concerned, and in fact every other public utility in Maryland which had not theretofore acquired rights and franchises and exercised them within the corporate limits of Havre de Grace, the Acts 1902, ch. 127, was an amendment of their charters, if granted subsequent to the Constitutions of 1851 or 1867, or the Act of 1868. The appellee does not pretend that in 1902 it had entered

the city of Havre de Grace, or had contemplated or thought of extending its operations to that place, or anywhere in Harford County. The appellee, except through its predecessors or constituent companies, had not come into existence. At that time its operations were being conducted in a very limited way by the respective companies, which were more or less in competition, supplying only Baltimore and small areas of Howard, Anne Arundel, and Baltimore Counties, lying contiguous to Baltimore City. It is no answer now that it has large power houses and that it can draw on the supply of the hydro-electric plant at Holtwood on the Susquehanna for power, as the Northern Company and other electric companies may. It is the status of the appellee in 1902, when the charter of Havre de Grace was amended, that becomes in our opinion a controlling factor in this case. Did that act impair the obligation of the appellee's contract, and did the Legislature by that act amend, as to Havre de Grace, the charter or charters of the appellee, and did the Legislature have the right so to do? In our opinion the appellee's charter was so amended, and the Legislature, under its reserve constitutional and statutory powers, had the power to make such an amendment.

It is provided by section 48 of article 3 of the Maryland Constitution that "corporations may be formed under general laws, but shall not be created by special act, except for municipal purposes, and except in cases where no general laws exist, providing for the creation of corporations of the same general character as the corporation proposed to be created; and any act of incorporation passed in violation of this section shall be void. All charters granted or adopted in pursuance of this section, and all charters heretofore granted and created subject to repeal or modification may be altered from time to time or be repealed," and by section 136 of article 23 of the Code of 1924 (Acts 1868, ch. 471), it was provided that "every corporation formed under the provisions of this article shall be subject to any and all provisions and regulations which may hereafter by any change in

or amendments of the laws of this State, be made applicable
to such corporation."

This is not the first time the question of the right of the
Legislature to repeal or amend a charter has been before
this court.   Our present view of the situation before us was
very clearly and forcibly expressed by Judge McSherry in
*Jackson v. Walsh,* 75 Md. 304, 311, where he said: "When
the charter was granted by the Legislature the Constitution
of 1851 was in force.   By section 47 of article 3 of that Con-
stitution it was provided that 'corporations may be formed
under general laws, but shall not be created by special Act
except for municipal purposes, and in cases where, in the
judgment of the Legislature, the object of the corporation
cannot be attained under general laws.   All laws and special
acts pursuant to this section may be altered from time to
time, or repealed.'   This provision was designed to be, and
so far as language could make it so, was a clear and explicit
limitation upon the power of the General Assembly to pass
thereafter any act of incorporation not subject to repeal or
amendment by legislative authority.   Upon the adoption of
that Constitution, every charter thereafter granted, even
though it contained no reservation of the right to repeal or
alter it, was subject to the paramount provision of the
organic law, which was binding on the Legislature and the
corporation alike.   The right of the state to repeal or alter
an act of incorporation was the express condition upon which
the grant was made in every instance after the adoption of
the Constitution of 1851, and an acceptance of the grant was
an unequivocal, as it was as irrevocable, acceptance of that
condition.   This right could have been no more effective had
it been written in the charter in the very words of the Con-
stitution itself; and its exercise by the Legislature cannot,
when it invades no vested right of property, be successfully
resisted in the courts as an infringement of a contract, be-
cause the constitutional provision is a term or stipulation
embodied in the contract to which the State and the incorpo-
rators are equally parties.   But it is needless to pursue the
subject further, for it has been distinctly, and we had sup-

posed finally, settled by this Court in *State v. R. R. Co.,*
44 Md. 164; *Amer. Coal Co. v. Consol. Coal Co.,* 46 Md. 22;
*Sprigg v. Telegraph Co.,* 46 Md. 77; *Appeal Tax Court v.
R. R. Co.,* 50 Md. 419; and by the Supreme Court of the
United States in *Shields v. Ohio,* 95 U. S. 324; *Sinking
Fund Cases,* 99 U. S. 720."

The appellee's contention that the Act of 1902, amending
the charter of Havre de Grace, is an invasion of its charter
rights and privileges, and that it now has over the entire
State of Maryland an irrepealable, unamendable franchise,
is based on the decision of the Supreme Court in *Russell v.
Sebastian,* 233 U. S. 195. In that case a gas company was
organized under the laws of California in 1909 and shortly
thereafter bought another company's plant, etc., which it pro-
ceeded to extend and enlarge over additional streets in the
city of Los Angeles. When the charter was granted, section
19 of article 11 of the Constitution of California provided
that in any city where there were no public works owned by
the municipality for supplying the same with artificial light,
any corporation duly incorporated for such purposes, under
such general regulations as the city should prescribe, should
"have the privilege of using the public streets and thorough-
fares thereof * * * so far as may be necessary for introducing
into and supplying such city and its inhabitants either with
gas or other illuminating light." This provision of the Con-
stitution was amended October 10th, 1911, one of its provi-
sions being: "Persons and corporations may establish and
operate works for supplying the inhabitants with such serv-
ices, upon such conditions and under such regulations as the
municipality may prescribe under its organic law." On
October 26th, 1911, the city council of Los Angeles adopted
an ordinance that no one should exercise any franchise or
privilege to lay or maintain pipes in the streets for convey-
ing gas, etc., without having obtained a grant from the city,
and on February 12th, 1912, passed an ordinance that it
should be unlawful for any person to make any excavation
in a street without written permission from the board of pub-
lic works. An employee of the gas company, who was exca-

vating in a street of Los Angeles, was arrested, and by *habeas corpus* his release was sought. From the refusal of the California courts, an appeal was taken to the United States Supreme Court on the alleged violation by the city of article 1, section 10, of the Federal Constitution, and of the Fourteenth Amendment. In that case the court said:

"The service was a community service. Incident to the undertaking in response to the state's offer was the obligation to provide facilities that were reasonably adequate."

"As to the question of fact, the present case presents no controversy. It was averred and not denied that the works of the gas company were established and operated with the intent to furnish gas throughout the city, wherever needed, and that this enterprise had been diligently prosecuted; that a large investment had been made in a plant which was adequate to supply a much greater territory than that reached by the distributing mains when the amendment of 1911 was adopted; that the expense of this installation made it impossible to supply at a profit the limited territory contiguous to the streets then actually occupied by the company, and that if it were confined in its service to that territory it would sustain a constant loss. The company, by its investment, had irrevocably committed itself to the undertaking, and the acceptance of the offer of the right to lay its pipes so far as necessary to serve the municipality was complete."

When the constituent companies of the appellee wrote their charters, they designated the State of Maryland as the place where the operations were to be carried on. There is no claim made that in 1902 or in 1910, when the Public Service Law was passed, that they were serving any territory except the city of Baltimore and some contiguous territory in Baltimore, Anne Arundel and Howard Counties, or that they were adequately equipped or financed to take over the electric light and power business of the state. They were local, in the sense that all other electric light companies in the state, and there were many of them, were local. The contention is now, that if an electric utility corporation obtains a charter from the State and begins operations, no matter how

small, then, by the authority of the decision of the Supreme Court in *Russell v. Sebastian, supra,* it has an irrepealable, unamendable charter or franchise to extend its operations over the entire state, whenever and wherever it pleases, reservations by State Constitution and laws to the contrary notwithstanding.

Our construction of the decision in *Russell v. Sebastian* is that the court held the constitutional provision of 1911, which was adopted after the charter and commencement of operations of the gas company, had no retroactive effect on prior franchises which were not subject to repeal or amendment, and that it said so in the concluding paragraph of the opinion, which is: "We conclude that the constitutional amendment of 1911, and the municipal ordinances adopted in pursuance thereof, were ineffectual to impair this right, and that the company was entitled to extend its mains for the purpose of distributing its supply to the inhabitants of the city, subject to the conditions set forth in the constitutional provision as it stood before the amendment." As to the effect of charter reservations in constitution, see also *Greenwood v. Freight Company,* 105 U. S. 13, 26 *L. Ed.* 961 and note; *Cooley's Constitutional Limitations* (8th Ed.), 566, 570.

The appellee contends that Acts 1902, ch. 127, is a special, and not a local, law, and that at most any action taken thereunder by the Mayor and Council of Havre de Grace would be the exercise of the police power and not a grant of franchise, as the appellee possessed that right under its charters. It is only necessary to refer to the very recent decision of this court in the case of *State v. Stewart,* 152 Md. 419, wherein the opinion was written by Judge Digges, for us to declare this to be a local law. The appellee in its brief and argument, and the court below in its opinion, ask where "it can be successfully contended that Havre de Grace, by the Act of 1902, ch. 127, is placed in the same position as Baltimore City?" If the statutory powers are the same, then the only difference is size. Havre de Grace was not the first city the consent of which was required for the exercise of an

electric service franchise.  Baltimore was the first city ex-
cepted from the exercise, without leave, of any general elec-
tric charter over its streets.  The act under which the appel-
lee derived its powers, now section 337 of article 23 of the
Code of 1924, required it to "obtain the assent and approval
of the Mayor and City Council of Baltimore City before
using the streets or highways of Baltimore City, either the
surface or the ground beneath the same."  This clause is the
inclusion of a local law in a general law, and because it is
included in the provisions of a general law, it is none the less
a local law.  *State v. Stewart, supra.*  The Act of 1902,
chapter 127, amending the charter of Havre de Grace, says:
"No use shall be made of the streets of said city * * *
without the consent of the Mayor and City Council," etc.
There is little difference in the wording of the two acts; they
have the same meaning.  The effect of such a provision has
been determined by this court in *Edison Company* (the first
consolidated constituent of the appellee) *v. Hooper,* 85 Md.
110, wherein Judge Briscoe said of Acts 1886, ch. 161: "It
therefore follows, that by virtue of the requirements of this
last named act, the appellant must obtain the assent and
approval of the Mayor and City Council as well as a special
grant from the General Assembly, before it is lawfully en-
titled to the relief asked under this petition."  This section
has since been amended so as to require only the consent of
the Mayor and City Council of Baltimore.  All it had under
its charter was "the franchise of being a corporation in
Baltimore, with no rights or privilege to use the streets of
Baltimore without the assent of the Mayor and City Coun-
cil of that city by ordinance duly passed."  From the passage
of the Act of 1902, that was the status of the appellee and
all other electric corporations not operating in Havre de
Grace.

By Acts 1910, ch. 180, the Public Service Commission
Law was passed, by which it was provided, under section
31¾ (section 388 of article 23 of the Code of 1924): "The
Commission shall have the general supervision of all per-
sons and gas corporations and electrical corporations, and

other corporations having authority under any general or special law, or under any charter or franchise to lay down, erect or maintain wires, pipes, conduits, ducts or other fixtures, in, over or under the streets, highways and public places of any municipality, for the purpose of furnishing or distributing gas, both natural and artificial, or of furnishing or transmitting electricity for light, heat or power or maintain underground conduits or ducts for electrical conductors." And by section 33 of that act (article 23, section 447 of the Code of 1911; article 23, section 390, of the Code of 1924; Acts 1924, ch. 48), it is provided that "no gas corporation or electrical corporation incorporated under the laws of this or any other state shall begin construction or exercise any right or privilege, under any franchise hereafter granted, or under any franchise heretofore granted but not heretofore actually exercised, without first having obtained the permission and approval of the commission."

If "franchise," as used in the latter provision, means municipal consent (in this case the consent of Havre de Grace), then, before the appellee could begin construction in Havre de Grace under the ordinance of March 7th, 1927, it required the permission and approval of the Public Service Commission. It will be noted that section 31¾ of the Act of 1910 provides that the commission "shall have the general supervision of all * * * electrical corporations having authority under any general or special law, or under any charter or franchise." If charter and franchise are the same thing, why so distinguish them? In *Purnell v. McLane,* 98 Md. 589, 592, Judge Pearce said: "The appellant concedes that the use of the city streets for delivering his product to the consumer is a franchise, and that he cannot make such use of the streets without the permission of the State or of the municipal government acting under legislative authority. These mutual concessions rest upon accepted authority." And he further says that in *Bank of Augusta v. Earle,* 13 Pet. (U. S.) 595, franchises were defined by Judge Taney as "special privileges conferred by the government on individuals which do not belong to the citizens of the country

of common right; * * * and in this country no franchise can be held which is not derived from a law of the State." "Such a franchise may be granted either directly by the legislature or by a municipal corporation, provided the latter is clothed with the power, but it must emanate from the State." *Baltimore County Water Co. v. Baltimore County,* 105 Md. 154, 162. "Neither domestic corporations nor natural persons could construct or maintain their lines in the streets or highways of Baltimore City without the city's consent, or a franchise therefor obtained from it." *Patapsco Co. v. Baltimore,* 110 Md. 306, 310.

Municipal consent is called a "franchise" in *Hagerstown v. Hagerstown Ry. Co.,* 123 Md. 183, 192: "The right to occupy the streets with gas mains is a franchise; the actual occupation of them in that way, pursuant to the franchise, is the acquisition of an easement." *Consolidated Gas Co. v. Baltimore,* 101 Md. 542, 546. In *Edison Company v. Hooper, supra,* this court held that the charter of an electrical corporation, in so far as it affected the streets of Baltimore, was only the right to be a corporation, and that it conferred no franchise on the streets of that city until the company should secure the consent of its Mayor and Council. Under an act almost identical in terms, the same authority over its streets was reserved to Havre de Grace, Acts 1902, ch. 127. It is evident from the decisions in this state that the ordinance of the Mayor and City Council of Havre de Grace, consenting to the use of its streets by the appellee, was a franchise, and, before its exercise, required the approval of the Public Service Commission and permission for its exercise.

The other question is as to whether the approval of the Public Service Commission is required for the extension of the appellee's lines from Short Lane in the second election district of Harford County to Havre de Grace, a distance of about six miles, as well as for the extension of the appellee's lines over the streets of Havre de Grace. It was held by this Court, in *Hagerstown v. Littleton,* 143 Md. 591, that before the City of Hagerstown could begin the construction

of the plant and works authorized by Acts 1920, ch. 40, it required the approval of the Public Service Commission. That was not by virtue of the provision in the Act of 1910 that "no municipality except the Mayor and City Council of Baltimore shall build, maintain and operate for other than municipal purposes any works or systems for the manufacture and supplying of gas or electricity for lighting without a certificate of authority granted by the commission," as Hagerstown already had a plant and system in operation, constructed and operated under authority of Acts 1898, ch. 381, and Acts 1900, ch. 75. It could not have been regarded as new construction, but was an enlargement and extension of its plant, equipment and facilities, and this court declared a certificate of authority necessary in that case.

Even if the contention of the appellee, that under its statewide charter it had a right to extend its operations into the new territory extending from Short Lane to and over the streets of Havre de Grace without the approval of the commission under section 33 of Acts 1910, ch. 180 (article 23, section 390, of the Code of 1924), were conceded, it would be confronted with Acts 1922, ch. 355, now section 398 of article 23 of the Code of 1924, which is: "All provisions of this sub-title in reference to steam railroads, street railroads and common carriers, so far as the same shall be practically, legally or necessarily applicable to gas and electrical corporations in this State, are hereby made applicable to such gas and electrical corporations, except so far as they may be repugnant to the special provisions of this sub-title relating to gas and electrical corporations." By section 379 of article 23 of the Code (section 26 of chapter 180 of Acts 1910), it is provided that "no common carrier, railroad corporation or street railroad corporation shall begin the construction of a railroad or street railroad, or any extension thereof, or exercise any franchise or right under any provision of the railroad law, or of any other law not heretofore lawfully exercised, without first having obtained the permission and approval of the commission." Reading these two sections together, the intention of the Legislature could not have been

more clearly expressed if the Act of 1922 had read: "No electrical corporation shall begin the construction of an electric light and power plant or system, or any extension thereof without first having obtained the permission and approval of the commission."

It is no answer to this proposition that the appellee has never "begun the construction of a railroad or street railroad or any extension thereof," as it has suggested in its brief. It was the clear and manifest purpose of the Act of 1922 to require all gas and electrical companies to obtain the approval of the commission before any initial construction or any extension into new territory. The Act of 1922 had the further effect of removing any doubt as to the construction and meaning of section 33 of the Act of 1910 (section 390, article 23, of the Code of 1924), as to the exercise of "any right or privilege heretofore granted but not heretofore actually exercised." In *Gregg v. Public Service Commission,* 121 Md. 1, 30, this Court, in an opinion by Judge Stockbridge, said: "It is a well recognized rule that all statutes upon the same subject-matter are to be harmonized as far as possible; and this is true whether the acts relating to the same subject were passed at different dates, separated by long or short intervals. They are all to be compared, harmonized if possible, and if not susceptible of a construction which will make all their provisions harmonize, they are made to operate together so far as possible, consistent with the evident intent of the latest enactment," and, in the concluding paragraph of the opinion. "Nor has there been very much in the way of the citation of authorities, for the reason that in a case of this character the important element is the act itself and the phraseology of it."

When the appellee constructed its lines to Havre de Grace and over its streets, it was undertaking to serve new territory which it does not appear to have had in contemplation until long after its incorporation and the passage of the Public Service Law of 1910, and the record shows no act of the appellee which could be construed into the exercise of its franchise from Short Lane to Havre de Grace and over the streets

of Havre de Grace under its general charter at the time of the passage of the Act of 1922. In the exercise of a state-wide, or general, electrical charter, each town or aggregation of people in sufficient numbers to induce a corporation to look upon the territory as promising a profit should be regarded 'as a separate unit and not as a part of the whole state, to be served or not served at the pleasure of the corporation operating under such a charter. If the exercise of this sort of charter is delayed in any territory in the state, the delay is at the risk of legislation restraining, limiting, or repealing the charter 'as to such unoccupied territory, and subject to such regulations as may be imposed by statute. *New York Electric Lines v. Empire Subway Co.,* 235 U. S. 175.

Entertaining, as we do, the view that Acts 1902, ch. 127, amended the charter of the appellee as to Havre de Grace, and that therefore a franchise from Havre de Grace was necessary before the appellee could there enter with its works, and that, under section 390 of article 23 of the Code of 1924, the approval of the Public Service Commission was necessary to the exercise of the franchise; and further, that the approval of the Public Service Commission was necessary, under sections 390 and 398 of article 23 of the Code of 1924, before construction of the extension from Short Lane to Havre de Grace and over the streets of Havre de Grace, the writ should have issued as prayed.

> *Decree reversed with costs, and cause remanded for the passage of a decree to conform with this opinion.*

OFFUTT, J., filed the following dissenting opinion:

As I read it, the majority opinion in this case rests upon these two propositions: (1) Conceding that the Consolidated Gas Electric Light and Power Company, herein referred to as the power company, had prior to 1902 a state-wide franchise to use the roads, streets, and highways in the State of Maryland for the transmission and sale of electric current,

that franchise, so far as Havre de Grace was affected by it, was repealed by chapter 127 of the Acts of 1902, which prohibited such use of the streets of that city without its consent; that therefore, before the power company could go into Havre de Grace, it was obliged to get the consent of the municipality, that its consent amounted to a new franchise, and that the instant it accepted that franchise the power company fell under the operation of section 390, article 23, Bagby's Code, and was obliged to secure the approval of the Public Service Commission before exercising any rights under that new franchise. (2) The state-wide franchise to use the streets, roads, and highways of the state for the transmission and sale of electric current, which the power company enjoyed prior to 1910, while single and complete in form, was nevertheless actually the sum of an indeterminate number of inchoate franchises wholly uncertain in extent, which would fructify and ripen only and when and as they were actually exercised; and that the Public Service Act of 1910, as well as the amendment of 1924, which prohibited the exercise of franchises by companies supplying electric current without the approval of the Public Service Commission, except in cases where the franchise had theretofore been "actually exercised," applied to and limited the rights of the power company everywhere, except in territory in and contiguous to Baltimore City, because that company had not actually exercised its franchise by using the public highways anywhere else for the transmission and sale of electric current.

I do not agree with either of these propositions. If the second is sound, the first is immaterial, because, if it is true, as the court finds, that the power company never had exercised that little piece or part of its franchise, which gave it the right to use the streets and highways in and about Havre de Grace to transmit and market its current, prior to 1910, and if its state-wide franchise was not a single undivided thing, but the aggregate of undetermined units of which Havre de Grace and vicinity was one, then the power company, before it can now use the streets and highways of

Havre de Grace and vicinity, must, under section 390 of article 23, Bagby's Code, secure the approval of the Public Service Commission.

But assuming that the proposition is material to the issues raised by the appeal, I do not think it is sound. It turns finally on the meaning to be given the word "franchise." Now in arriving at that meaning, manifestly we are not to be limited by the verbal niceties and refinements of lexicographers, but are to consider what the Legislature meant by the language it used. Legislative acts affect everybody within their reach, and, in construing their language, we ought to be guided rather by the dictates of common sense, common usage, and common experience, than by any rigid, arbitrary, or technical formula whatever. As the opinion states, a franchise is a privilege granted to individuals which does not belong to all the citizens as of common right, which can only be granted by the government. In this case, prior to 1902, the State had granted to the power company through its constituent companies the privilege of using all the roads, highways and streets of the state, except such as were located in the city of Baltimore, for the transmission and sale of electric current, and the power company through some of its constituent companies had accepted the grant by exercising the privilege. Then in 1902 the Legislature qualified that grant as to the City of Havre de Grace by requiring the power company to secure the assent of the municipality before using the streets or highways thereof for the transmission and sale of its current. Assuming that the city of Havre de Grace was at that time fallow territory, I have no doubt that the Legislature had the power to make that qualification, but the question here is not whether it had the power to do that, but whether it exercised it. In other words, when the Legislature in 1902 qualified the original grant by requiring as a condition precedent to its exercise in Havre de Grace the consent of that municipality, did it intend retroactively to convert the actual and complete franchise which the power company then had into an inchoate and incomplete franchise, or did it intend only to give the

municipality the right to prevent the exercise of the franchise within its limits and to leave the franchise as to the rest of the state as it was. If it did not intend to affect the general status of the power company's franchise, and I do not think it did, then the company was not affected by chapter 390, article 23, Bagby's Code, because it had actually operated under it prior to 1910. I say that I do not think the Legislature intended by Acts 1902, ch. 127, to modify, qualify, or limit the franchises then enjoyed by the power company further than to prevent it from exercising them in Havre de Grace without municipal consent, and the Legislature, when it passed the Public Service Commission Act, must have thought so, too, when it exempted from its application such corporations as had actually exercised franchises theretofore granted. If it had meant by that language to designate only such corporations as had actually and physically exercised the franchise in a given territory by the construction of generating plants and distributing lines, it would have been wholly unnecessary because, after the corporation had accepted the State's offer and had made substantial capital expenditures, it acquired a vested right to continue to exercise its franchise as far as was reasonably necessary to protect its investment. The proposition that the State could invite the investment of substantial sums in a public utility, and then destroy the value of the investment by revoking the only privileges which made it valuable, is patently unsound, and the Legislature could have had no such case in mind when it referred to the actual exercise of a franchise, because there was no need to state what everybody knew. And if it had intended to repeal the power company's right to extend its service to any new territory without the consent of the commission, it would have said so. It did not say so, and it could not, in chapter 127 of Acts 1902, have said so, because no such purpose is indicated in the title of that act. And I cannot escape the conviction that the company had an entire and complete franchise which it had exercised prior to 1910, and that therefore it was not affected by chapter 180, Acts 1910.

The vital and important matter determined by the opinion, however, involves the second proposition, which is that, notwithstanding the exemption contained in chapter 390, Code P. G. L. of Md., the power company has not now and has not had since 1910 the right to extend its service to any town or "aggregation of people" large enough to indicate a profit from the service without the permission of the Public Service Commission. The reasons advanced in support of these conclusions are that, under chapter 355 of Acts 1922, the steam and street railroad provisions of article 23 of the Code, *supra,* are applicable to the power company, and that those provisions in effect mean that "no electrical corporation shall begin the construction of an electric light and power plant or system, or any extension thereof without first having obtained the permission and. approval of the commission." The difficulty about that equation, however, is that it ignores the proviso exempting from the application of those provisions franchises theretofore lawfully exercised. But that exemption can no more be ignored in the sections of the act relating to railroads than in chapter 390. But to escape the effect of that exemption the opinion adopts this rule: "In the exercise of a state-wide or general electrical charter, each town or aggregation of people in sufficient numbers to induce a corporation to look upon the territory as promising a profit should be regarded as a separate unit and not as a part of the whole state, to be served or not served at the pleasure of the corporation operating under such a charter." That proposition goes too far. No authority is cited to support it, for I do not think the case of *New York Electric Lines Co. v. Empire City Subway Co.,* 239 U. S. 139, bears upon it at all. What that case decides, and all it decides, is that an unused franchise is not "susceptible of practically indefinite retention," but that is not the same thing as holding that a franchise to use the streets, roads, and highways of the entire state may not be a single and an entire thing, but must be the aggregate of an indefinite number of units, each one of which is composed of an "aggregation of people in sufficient numbers to induce a corporation to look upon the

territory as promising a profit." As I have said, I do not question the right of the Legislature to revoke or repeal so much of such a franchise as relates to territory in which it has never been actually exercised, and which the corporation possessing it is not obliged to serve, but that is not the question. It is rather whether, until such a franchise is repealed as to such territory, it is to be regarded as single and undivided. In my opinion, until repealed it is single and entire, and therefore any work done under it, or any privilege exercised in pursuance of the powers granted by it, is necessarily an exercise of the entire franchise, and I see no logical escape from that conclusion. And as the power company through its constituents had actually exercised such franchise prior to the Public Service Commission Act of 1910, for that reason it was not affected by it, and had on March 7th, 1927, the right to extend its lines outside or inside the limits of Havre de Grace without the consent of the Public Service Commission, because at that time the State had never required as a condition precedent to such extension the consent of the Public Service Commission.

For these reasons I feel constrained to dissent from the very careful and able opinion filed for the court by Judge Sloan.